Mosby-Dennison Company *v.* Maxwell.

Opinion delivered December 13, 1920.

EXECUTION—SHERIFF'S DEED—DESCRIPTION.—A sheriff's deed conveying a fractional section except the fractional northeast quarter, containing 106.66 acres, and 49.26 acres off north side of the northwest quarter, claimed as a homestead *held* a definite description.

Appeal from Arkansas Chancery Court, Southern District; *John M. Elliott,* Chancellor; reversed in part.

*Lee & Moore, J. D. Mosby* and *Moore & Vineyard,* for appellants.

1. The burden was on plaintiffs to show (1) that the lands from which the timber was cut belonged to plaintiffs; (2) that the timber was cut from plaintiff's lands without right, and (3) the value and quantity of the timber cut. Plaintiffs are not entitled to recover unless they show title in themselves or Maxwell as trustee for the bank; the burden was on them and they can not rely on the weakness or want of title in defendants. 117 Ark. 153; 76 *Id.* 428; 104 *Id.* 154; 95 *Id.* 209. Mere color of title is not sufficient. *Ib.* The quantity and value of the timber cut must be proved by plaintiffs. 92 Ark. 298; 101 *Id.* 34. The proof is insufficient as to when the tim-

ber was cut, where it was cut or its value. An examination of the various plats and surveys filed with the proof will show that the description of the lands is not sufficient to locate or identify them. 56 Ark. 161; 60 *Id.* 489; 76 *Id.* 460; 17 Cyc. 1345; 10 R. C. L. 146.

2.  If the court should hold the deed did convey the title by proper description to that part of section 36 not excepted from the description to O. P. Maxwell, trustee, it could only follow that the purchaser, Maxwell, took only the lands in section 36. A sheriff's sale of real estate only passes such title as is in the execution-creditor. 7 Ark. 434. One who buys at execution sale is not an innocent purchaser without notice and he takes subject to all the equities existing at the time of the purchase. 31 Ark. 253; 36 *Id.* 369; 42 *Id.* 450. Bare proof that some of the timber was cut by some of appellant's men is not sufficient to charge it with responsibility for all the timber missing from the land. The testimony brings this case within 92 Ark. 297; 75 *Id.* 429.

3.  Under the proof the plea of estoppel is well founded, and that J. H. Martin is the real party in interest and not the Bank of Gillette of which he is president; and as J. H. Martin and his cotenants pointed out the lines as set out in defendants' answer and cross-complaint, the plaintiff is estopped.

4.  A purchaser at execution sale in his own favor takes the property charged with all rights and equities existing against the defendant in execution. 58 Ark. 252; 71 *Id.* 318; 81 *Id.* 279.

5.  The testimony of witnesses show that for many years the south boundary line of section 36 was recognized and treated as the south boundary line of the property owned by White. It appears further that at one time Anderson owned the lands now owned by appellants, while at the same time White owned fractional section 36, and that Anderson cut three trees on section 36 by mistake in the boundary and had to pay White for them, and that White showed him the boundary line

which was just a short distance north of the commissary. It also appears that at another time when Anderson was cutting timber 'for Jones on White's land he was cautioned not to go south of the south boundary line of section 36 and if he did he would be cutting timber on his own land. Where adjoining owners are in dispute as to a dividing line, their oral agreement establishing the line, followed by possession with reference thereto, is valid and binding upon the parties, and does not operate as a conveyance so as to pass title from one to another. 219 S. W. 348; 96 Ark. 168; 110 *Id.* 197; 102 *Id.* 542. The rule of *caveat emptor* applies to execution sales and a purchaser takes subject to all prior equities of other parties. 128 Ark. 462; 131 *Id.* 492; 136 *Id.* 204; 215 S. W. 611. The sheriff could sell no land not specifically levied on and carried no accretions. 76 Ark. 43. The burden was on appellees to establish the fact that the land in controversy was an accretion to section 36. If not an accretion to 36, under no circumstances can appellees prevail.

Appellees can not recover, because (1) there was no levy of execution nor sale or conveyance by the sheriff to O. P. Maxwell, trustee, of the land in controversy; (2) sheriff's deed is void for want of proper description. (3) Appellees are estopped from the fact that Anthony White, the execution-debtor, claimed only to north line of the tract in controversy or the south boundary of section 36 and the purchaser at sheriff's sale could take no more than White owned or claimed. (4) There is a total want of testimony as to the value and quantity of timber cut or the location of the land from which it was cut, and the court had nothing before it upon which to base its findings as to the value of timber cut. (5) The proof does not show the quantity of timber cut from the lands admittedly owned by appellants. (6) The burden of proof was on appellees to show that the Bank of Gillette was the real party in interest, and they have failed. (7) Under the proof the lands are accretions to sections 26 and 27. (8) There was an agreed boundary line between

Anthony White, the owner of section 36, and the owner of sections 26 and 27, under which the accretions were not claimed by White. (9) The burden was at all times on appellees to establish the facts necessary to recover, none of which were established by them.

*T. J. Moher* and *John L. Ingram,* for appellees.

1. The burden of proof was not on appellees, but, if so, the deeds and actual possession vested a good title in them to section 36 and the accretions thereto.

2. The description is sufficiently definite. The sheriff's deed sufficiently describes the lands. The accretion was part of the section conveyed. There was no contention that there was a mistake in the deed.

3. The proof shows that Maxwell was trustee for the bank and not for Martin.

4. Neither Martin and Collier nor Champion pointed out the lands as appellants contend. The burden was on appellants to show that Maxwell was trustee for Martain, instead of the bank, and it is immaterial what Collier and his associates said or did about the lines at the time of the sale of sections 26 and 27.

5. The evidence shows that the timber was cut on the land in controversy. The answer does not deny that appellants cut 200,000 feet of timber from the lands and the evidence shows it.

6. The value of the timber cut was proved by the testimony clearly.

7. The land was an accretion to section 36, to which appellees had title. 29 Cyc. 348; 53 Ark. 314. The court so found, and the law and the testimony sustain the finding.

HUMPHREYS, J.   This is an appeal from a decree of the Arkansas Chancery Court quieting and confirming the title in appellees to the following described land in Arkansas County, State of Arkansas, towit: Frl. section 36, township 7 south, range 4 west (except frl. northeast quarter of said section and except 49.26 acres off the north side of said frl. northwest quarter of said

section), and said accretion thereto, towit: All of said land bounded on the west and south by the Arkansas River and on the east by Old River and on the north by said section 36; and the rendition of a judgment in favor of appellees against appellants in the total sum of $1,214 for timber alleged to have been cut and removed by appellants from said lands without the permission of appellees. The issues to be determined on this appeal, as presented by the pleadings as finally made up and the evidence adduced, are as follows:

*First.* Whether or not appellees owned any part of fractional section 36, township 7 south, range 4 west.

*Second.* Whether the land immediately south of said section and bounded on the west and south by the Arkansas River and on the east by Old River was an accretion to said section 36 or an accretion to sections 26 and 27 in township 7 south, range 4 west, in said county and State.

*Third.* Whether appellants cut 200,000 feet of timber on the accreted lands aforesaid, and the value thereof.

(1) Appellees' chain of title to fractional section 36 aforesaid consisted in a sheriff's deed from T. F. Hudson, sheriff of Arkansas County, to O. P. Maxwell, trustee, executed in January, 1911, pursuant to an execution sale under a judgment in favor of J. H. Martin against Anthony White, and mesne conveyances back to and including a patent from the United States Government. The immediate grantors of Anthony White were W. A. Gage and wife, who conveyed all of said section 36 to him on January 25, 1901. The description contained in the conveyance aforesaid from the sheriff to Maxwell, as trustee, describes the land as "All Frl. Sec. 36, Twp. 7 S., R. 4 W., 448 acres, except Frl. NE¼ Sec. 36, Twp. 7 S., R. 4 W. 106.66 acres; and off north side Frl. NW¼ Sec. 36, Twp. 7 S., R. 4 W., 49.26 acres claimed as homestead by defendant, Anthony White." Appellants contend that appellees obtained no title to any

part of said section 36 under this deed, because the description is insufficient to identify any particular land. It is said the shape and location of the exceptions in the description are not designated, and, for that reason, the whole description is so indefinite and uncertain that a surveyor could not take the sheriff's deed and locate the land. The sheriff's deed includes all of said fractional section 36 with two exceptions. The first exception is the fractional northeast quarter of said section, containing 106.66 acres, which is definite, for it necessarily means that all of the northeast quarter of the section is excepted. The second exception is 49.26 acres off of the north side of the fractional northwest quarter of said section. According to the government survey, fractional section 36 is bounded on the north by a straight line which divides it from fractional section 25. The line dividing the northeast and the northwest fractional quarters of said fractional section 36 is also a straight line running north and south. A part of the north and all the west side of said northwest fractional quarter is bounded by the Arkansas River, the contour thereof being circular. This court has held that a certain number of acres off of either side of a tract of land not fractional is a definite description because such description necessarily means a tract of land in the form of a parallelogram laid off on the side designated so as to contain the specified number of acres. *Watson* v. *Crutcher,* 56 Ark. 44. By the same process of reasoning, the second exception in the sheriff's deed may be definitely located by dropping south a sufficient distance so that, by running a line parallel to the straight line on the north, the boundaries would contain the acreage designated. The exceptions being definite and valid, the title to the balance of said section 36 passed by the deed to appellees. Appellants also assail the title on the ground that Anthony White, the execution-debtor, only claimed to the south boundary of the original land and laid no claim to the accretions on the south, comprising the land

in dispute. This issue of fact was in sharp conflict and decided adversely to appellants by the chancery court. After a careful analysis of the evidence responsive to this particular issue, we are unable to say the finding of the chancery court was contrary to a clear preponderance of the evidence. Appellants also assail the title of appellee O. P. Maxwell, as trustee for the Bank of Gillett, on the ground that in point of fact O. P. Maxwell acted as trustee in the purchase at the execution sale for J. H. Martin and not the Bank of Gillett, and that J. H. Martin, and not the bank, owns the beneficial interest in the land. Three witnesses testified on this point. It will only be attempted to set out the substance of their testimony. J. H. Martin said that he and the bank each had a judgment against Anthony White; that his lien was prior to the lien of the bank; that the bank, through its trustee, O. P. Maxwell, purchased at his execution sale in order to protect itself; that he has no beneficial interest in the land except as a stockholder in the bank; that the bank is the beneficiary in the sheriff's deed. J. W. Denison, one of the appellants, said that when he went to see O. P. Maxwell about this suit, O. P. Maxwell told him the Bank of Gillett had no interest in the matter; that, in the purchase of the land, he was acting as trustee for J. H. Martin and directed that he go to Martin; that he went to see Martin and could get no satisfaction out of him. J. M. Thompson, who succeeded O. P. Maxwell as cashier of the Bank of Gillett, was introduced by appellants and said that the records of the bank since 1908 were in existence and would likely show the transaction in relation to the purchase of the land, but he had made no investigation of them because he dreaded the undertaking, although informed by J. H. Martin several days before that appellants would probably want to know what the records of the bank would show. He said on cross-examination that the bank had paid the taxes on the land.

It can not be said that the unsworn statement of Maxwell and the omission of his successor in office to examine the record are of greater weight than the sworn statement of J. H. Martin, coupled with the payment of taxes by the bank. This brings us to a consideration of the second question presented on this appeal, which is whether the land in dispute is an accretion to section 36 or to sections 26 and 27. The major part of the evidence adduced on the trial had relation to this issue. To incorporate even the substance of the testimony of each witness on the point in this opinion would extend it to an unusual length, for the record is very voluminous. On behalf of appellees, the evidence tends to show that the land in dispute is an accretion to section 36. On behalf of appellants, it tends to show that it is an accretion to sections 26 and 27. After a very careful reading and consideration of the evidence, we are convinced that upon this point it preponderates in favor of the finding of the trial court to the effect that the land is an accretion to section 36. We are to some extent influenced in reaching this conclusion by the following physical facts, fairly well established by the witnesses, and various plats representative of said sections and the accretions in question: Fractional section 36, generally known as Thetford's Island, and the accretions in dispute south of the original land comprising the island are bounded on the west and south by the new channel of the Arkansas River and on the east by the old channel of the Arkansas River, in which is what is known as the "blue hole" which is quite a large hole of water. During certain portions of the year, considerable water flows through the old channel of the river. Sections 26 and 27 lie to the east of the old channel of the river and the accretions in question are separated from said sections by a part of the blue hole of water and the old channel of the river. The largest timber which was removed was found on the north side of the accretions, or just south of the original land comprising Thetford's Island,

or said section 36. On farther south the timber grew
smaller, and the southern boundary of the accretions
tapered off in a sandbar. As above stated, these physi-
cal facts indicate to our minds that the accretions in
question were an imperceptible increase of fractional
section 36 through the operation of natural causes, and
tended to strongly corroborate the evidence of the wit-
nesses testifying on behalf of appellees that the land in
dispute was an accretion to said section.

(3) The last question presented for determination
is whether appellants cut as much as 200,000 feet of tim-
ber off of the accreted lands in dispute, and, if so, the
value thereof. The only witnesses introduced whose
testimony tended to establish the quantity of timber cut,
the place cut and its value, were C. C. McAllister and
H. W. Mosby. C. C. McAllister was the party who cut
the timber. He testified, in substance, that he cut some-
thing like 238,000 or 239,000 feet of cottonwood timber
near the north line of the accretion in question and from
the north line on down and from the blue hole to the
Arkansas River, and that the timber, including the haul,
was sold for $7 a thousand; that he delivered this timber
to appellants. H. W. Mosby testified that they cut 250,-
000 feet on the entire land, but it was not all cut on the
accreted land in dispute. He was unable to say just
what part was cut on the lands in question, and did not
testify concerning the value of the timber cut. We think
it quite evident from this evidence that at least 200,000
feet of timber was cut on the accreted lands in question,
but are of opinion that the evidence is insufficient to es-
tablish its stumpage value. The insistence of appellees
that the allegation of $4 per thousand in the complaint
was not sufficiently denied in the answer of appellants
is not sound. We think the language of the answer ef-
fectually put this question in issue.

The decree confirming the title to the accreted lands
in question in appellees is affirmed, but the judgment
rendered against appellants for the value of the timber

is reversed and remanded for a new trial with direction to hear additional proof as to the value of the timber.