| | |
|---|---|
| 70 | 487 |
| 73 | 171 |
| 76 | 233 |
| 70 | 487 |
| 80 | 80 |
| 70 | 487 |
| 107 | 313 |
| 70 | 487 |
| 149 | 458 |

[No. 9311.   Department Two. — August 27, 1886.]

WILLIAM S. CHAPMAN, RESPONDENT, v. MARY POLACK ET AL., APPELLANTS.

EJECTMENT — BOUNDARIES — LAND INCLUDED IN QUARTER-SECTION — EVIDENCE TO CONTRADICT SURVEY. — The action was brought to recover the possession of certain land. The plaintiff is the owner, by title derived from the United States government, of the southeast quarter of section 13 in township 11 north, range 9 west, Mount Diablo base and meridian, and the defendant Polack is the owner of the northeast quarter of the same section. The official plat of the approved survey of the township located the premises in controversy in the northeast quarter of the section. The patent under which the plaintiff claims describes the land conveyed as the southeast quarter of the section, "according to the official plat of the survey returned to the general land-office by the surveyor-general." Held, that neither parol evidence nor a private survey was admissible to show that the premises in controversy were situated in the southeast quarter of the section.

ID. — MAP REFERRED TO IN DEED. — A map of a tract of land, having lines drawn upon it marking the boundaries and the natural objects upon its surface delineated, which is referred to in a deed containing a description of the premises therein conveyed, is to be regarded as giving the true description of the land conveyed, as much as if it was expressly recited and marked down in the deed itself.

APPEAL from a judgment of the Superior Court of Napa County, and from an order refusing a new trial.

The facts are stated in the opinion.

James F. Stuart, McClure & Dwinelle, and H. A. Powell, for Appellants.

George A. Nourse, for Respondent.

SEARLS, C.—This is an action of ejectment to recover the southeast quarter of section 13 in township 11 north, range 9 west, Mount Diablo base and meridian.

The action was brought in the county of Sonoma, transferred to the county of Napa, and there tried by the court without a jury, and judgment rendered in favor of plaintiff, from which judgment, and from an order denying a new trial, defendants appeal.

The following are the facts and conclusions of law in the cause as found by the court:—

## "FINDINGS OF FACT.

"1. At the commencement of this action, and ever since the sixteenth day of April, A. D. 1878, the plaintiff was and still is the owner in fee-simple absolute of the premises described in the complaint, being the southeast quarter of section 13 in township 11 north, range 9 west, from the Mount Diablo base and meridian, according to the United States government survey.

"2. At the commencement of this action the defendants were and still are in possession of the Geyser Hotel, so called, and the cottages appurtenant thereto.

"3. Said hotel and cottages are and then were situate and standing on said quarter-section, and are and were a part thereof. I further find, as

## "CONCLUSIONS OF LAW,

"1. That plaintiff is and was at the commencement of this action entitled to the possession of the said quarter-section of land described in the complaint, with its appurtenances, including said Geyser Hotel and the cottages appurtenant thereto.

"2. That plaintiff is entitled to a judgment against the defendants in this action for recovery of said quarter-section of land, including said hotel and cottages, and for the costs of this action.

"Let judgment be entered accordingly.

"WM. C. WALLACE, Superior Judge."

The defendant Mary Polack is the owner of the north-east quarter of section 13 in township 11 north, of range 9 west, Mount Diablo base and meridian, according to the United States government survey.

Upon this quarter-section of land as she contends, but on the southeast quarter of the same section as plaintiff claims, defendant Polack had a hotel known as the Geyser Hotel, with certain cottages appurtenant thereto.

The whole case turned at the trial, not upon the title to the respective quarter-sections of land, for that was established beyond dispute, but upon the location of the dividing line between these quarter-sections.

If the line running through the center of section 13 from east to west, and dividing the northeast quarter from southeast quarter, runs north of the hotel and cottages, then the judgment of the court below is correct; if on the contrary that line runs south of the buildings, defendants were entitled to judgment.

There was testimony (introduced under objection) tending to show that a line drawn east and west midway between the north and south boundaries of the section runs north of the buildings, and includes them in the southeast quarter, and the court below adopted this testimony as true in its findings and judgment.

Defendants, however, at the trial and on the motion for a new trial, contended: 1. That the theory of plaintiff is incorrect as a matter of fact; and 2. That the government survey has fixed the lines of demarkation and situation of the hotel and buildings, and that as thus established under the approved survey they are all in the northeast quarter of the section, and that such approved survey is conclusive and must prevail, whether right or wrong, and that to admit evidence to the contrary was error.

The defendant Forsyth was a tenant under his co-defendant, Mary Polack, the genesis of whose title to

the northeast quarter of section 13 was founded upon certain school-land warrants located in 1854 upon that and adjoining lands. The land being unsurveyed, the act of the legislature of the state of California of May 3, 1852, gave to the purchaser and locator of such warrants the right to possession until surveyed by the United States.

On the 18th of April, 1859, an act was passed under which parties holding school-land warrants were permitted to procure title. On the 1st of September, 1862, Mary Polack procured a survey of the premises to be made, and relocated the school-land warrants, which survey was approved by the surveyor-general of California, and the warrants canceled in payment for the land, and a certificate of purchase issued to her.

On the fourteenth day of January, 1868, the map of the official survey of said lands by the government of the United States was filed in the proper United States land-office, and thereafter such steps were taken, that, the land having been listed to the state of California, a patent issued to Mary Polack under date of February 7, 1882, from said state of California.

Upon the official plat of the approved survey of township No. 11 north, of range No. 9 west, Mount Diablo base and meridian, a certified copy of which is in evidence, the Geyser Hotel is platted and located in the northeast quarter of section 13.

In other words, the dividing or quarter-section line east and west through section 13, runs south of the buildings in dispute, and if conclusive gives the demanded premises to defendants.

It appears from the official report of the deputy surveyor by whom the survey was made, that township No. 11 north, range 9 west, is of such a rough, broken, mountainous character that many of its lines could not be run and its corners established by actual and direct

measurement, and that the points were in such cases established by triangulation.

The northeast corner of section 13, which section contains the demanded premises, was thus established, as also the northwest and southwest corners of the same section, and the quarter-section corner on the west line of and between sections 13 and 14.   So far as we can determine from the field-notes, the southeast corner of the section and the quarter-section on the east line of section 13 were not established, except by triangulation, and the east line of section 13 was not run upon the ground.

The following are some of the principles for determining the boundaries and contents of the several sections, half-sections, and quarter-sections of the public lands under the laws of Congress:—

"1. All the corners marked in the surveys returned by the surveyor-general shall be established as the proper corners of sections or subdivisions of sections which they were intended to designate, and the corners of half and quarter sections not marked on the surveys shall be placed as nearly as possible equidistant from those two corners which stand on the same line.

"2. The boundary lines actually run and marked in the surveys returned by the surveyor-general shall be established as the proper boundary lines of the sections or subdivisions for which they were intended, and the length of such lines as returned shall be held and considered as the true length thereof; and the boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be," etc. (R. S. U. S., sec. 2396.)

The official township plat shows the line of demark-ation between the north and south half of section 13, shows Pluton Creek to run through the northeast quarter of the section, and Devil's Cañon to run in a southerly direction, and to enter Pluton Creek within said quarter-section, and locates the Geyser Hotel on the south bank of the creek, and nearly opposite the mouth of such cañon, and in said northeast quarter of the section.

It was under this survey and plat that defendant Po-lack purchased.

Georgie McBride, the grantor of plaintiff, subsequently, and on the ninth day of November, 1877, received a patent from the government of the United States for the southeast quarter of the same section, "according to the official plat of the survey of the said lands returned to the general land-office by the surveyor-general."

The testimony is ample to show that all the parties, until a recent period, regarded the hotel as being on the northeast quarter of the section. Georgie McBride, the grantor of the plaintiff, in making proof of her residence as a pre-emptor, testified to having resided upon the southeast quarter, except when at the Geyser Hotel, on the northeast quarter of the section.

Plaintiff, Chapman, was an applicant for the purchase of the northeast quarter of the section, and in a contest for such purchase, and in litigating between these par-ties and those in privity of estate with them, it is quite apparent that until a recent period the hotel property was regarded as being upon the northeast quarter of the section, as delineated upon the government plat. (*Chap-man* v. *Polack*, 58 Cal. 555; *Chapman* v. *Gurnee*, 66 Cal. 266; *Chapman* v. *Polack*, 5 West Coast Rep. 68; *United States* v. *Chapman*, 5 Saw. 528.)

Under these circumstances, the question arises, Can parol testimony and private surveys be received to show that the line laid down upon the approved official plat of the township, under which and with reference to which

the parties purchased, is erroneous, and that defendant's hotel, the mouth of Devil's Cañon, and Pluton Creek are all not in the northeast quarter, but in the southeast quarter, of the section, and that the line should run north of the hotel and creek, as shown upon the plat of Von Leicht, a witness for the plaintiff.

The "field-books" of public surveys are required by law to be returned to the surveyor-general, "who shall cause therefrom a description of the whole lands surveyed to be made out and transmitted to the officers who may superintend the sales.

"He shall also cause a fair plat to be made of the townships, describing the subdivisions thereof, and the marks of the corners.

"This plat shall be recorded in books to be kept for that purpose, and a copy thereof shall be kept open at the surveyor-general's office for public information, and other copies shall be sent to the places of the sale and to the general land-office." (U. S. R. S., sec. 2395.)

By the second section of the act of Congress of May 30, 1862 (R. S. U. S., sec. 2379), the printed manual of instructions in relation to public surveys, prepared at the general land-office February 22, 1855, the instructions of the commissioner of the general land-office, and the special instructions of the surveyor-general, when not in conflict with the printed manual of instructions of the commissioner, are to be deemed a part of every contract for surveying the public lands.

The manual referred to, provides for quarter-section posts, for the division of townships into sections and quarter-sections, that the character of the surface, soil, and timber shall be noted; also all rivers, creeks, and smaller streams of water which the lines cross, all towns, villages, houses, cabins, and other improvements.

These and a multitude of other objects are required to be noted. (1 Lester's Land Laws, 703.)

From the *data* furnished by the surveyor, the plats

are prepared. One of the objects of the manual and law was to simplify the mode of disposing of the public lands, so that without cumbering patents with descriptive field-notes the plats of the surveys should afford all necessary information to purchasers, and at the same time afford a convenient and certain description by reference of the land conveyed; and these official plats are made the basis of all sales and selections of the public lands, and are solely referred to in the usual patents to show what lands are patented. (*Bates* v. *Ill. C. R. R. Co.*, 1 Black, 207.)

By the plats of public surveys, lands must be identified and boundaries ascertained in all cases of the kind. (*Brown's Lessee* v. *Clements*, 3 How. 671; *Gazzam* v. *Lessee of Phillips*, 20 How. 375.)

It is true that the laws of the United States do not in terms provide for the location of quarter-section stakes, or for the survey of the interior lines of the sections, but under the manual and instructions it may be done, and in fact is most usually done, as appears by the evidence furnished by the plats.

It is with reference to the lines so run and the corners established that section 2396 of the Revised Statutes, quoted *supra*, provides that "all the corners marked in the surveys . . . . shall be established as the proper corners of sections or subdivisions of sections," etc., and the boundary lines actually run and marked in the surveys returned by the surveyor-general shall be established as the proper boundary lines of the sections or subdivisions for which they were intended," etc.

From these provisions, it appears that the lines of subdivisions, as well as of sections, are established by law.

The selection under which the defendant's purchase was made was based upon the official township plat of the public survey as required by the circular of instruc-

tions of the commissioner of the general land-office of August 6, 1847.    (1 Lester's Land Laws, 508.)

Where a map or plan of a tract of land, with lines drawn upon it marking the boundaries, and with the natural objects upon its surface laid down, is referred to in a deed containing a description of the premises therein conveyed, this map or plan is to be regarded as giving the true description of the land conveyed, as much as if it was expressly recited and marked down in the deed itself.    (*Vance* v. *Fore*, 24 Cal. 436; *Mayo* v. *Mazeaux*, 38 Cal. 442; *Serrano* v. *Rawson*, 47 Cal. 52; *Black* v. *Sprague*, 54 Cal. 266.)

As was said in *Vance* v. *Fore, supra*, "the map may be regarded as a daguerreotype of the land which the grantor intended to convey."

All the objects represented upon a plan are to have the same effect as they would if brought into the deed by verbal description.    (*Thomas* v. *Patten*, 13 Me. 333.)

How, then, stands the case?    Defendant was the owner of a house and out-buildings known as the Geyser Hotel property.

The approved official plat of the government of the United States showed this property to be upon the northeast quarter of section 13, with the line of demarkation between this and the southeast quarter of the section plainly laid down, and running south of the premises owned by her.

She purchased the northeast quarter of the section. Plaintiff's grantor subsequently purchased from the government the southeast quarter, and the patent refers to the same plat and surveys according to it, as hereinbefore mentioned.

Under such circumstances, we are of opinion the line as designated upon the plat, and running south of defendant's hotel, whether accurate or not, is to be deemed and taken as the true division line between the north and southeast quarters of section 13, and that

neither a private survey nor parol evidence was admissible to show that the line should in fact run north of defendant's hotel.

By the act of the government, such line had been created as a dividing line between the quarters of the section. (*Robinson* v. *Forrest*, 29 Cal. 325.) And as to persons who had purchased and acquired vested rights with reference to it, it is to be treated as correct. (3 Opinions Attorney-General U. S. 431.)

1. It follows from this view that as plaintiff introduced in evidence the plat which, together with the patent to the southeast quarter, established this line and his northern boundary thereat, the motion for a nonsuit should have been granted.

2. That the evidence of the private survey and the plat of Von Leicht, in contradiction of the plats of the surveys of the United States, were erroneously admitted.

The plan resorted to for ascertaining the position of the quarter-section stake on the east line of the section was the true method of determining the point in cases where the position of the quarter-section lines are not laid down, and their *locus* fixed; but when, as in this case, the position of the line has been fixed, and rights have vested with reference to it as established, the position for the quarter-section post is also determined as being at the end of the established line.

The judgment and order denying the motion for a new trial should be reversed, and a new trial had.

FOOTE, C., and BELCHER, C. C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

Hearing in Bank denied.