[No. 11780.   Department Two. — August 1, 1887.]

JOHN H. WISE ET AL., RESPONDENTS, v. J. B. BUR-
TON, APPELLANT.

PRACTICE — INSUFFICIENCY OF EVIDENCE TO JUSTIFY DECISION — SPECIFI-
CATION OF PARTICULARS — EJECTMENT. — In an action of ejectment, the
court found, in general terms, that the plaintiffs were, at a day anterior
to the commencement of the action, the owners and seised in fee and
possessed of the land in suit, and that the defendant had wrongfully
ejected them from such possession. The defendant moved for a new
trial, on the ground that the evidence was insufficient to justify the de-
cision. The assignments of error followed the findings, and were to the
effect that the evidence was insufficient to show that the plaintiffs, or
either of them, was the owner, or that the defendant ever ejected them
from the land. *Held,* that the specifications were sufficient, although
the particulars in which the evidence was claimed to be insufficient were
not stated.

BOUNDARY LINE — LOCATION OF ON GROUND — FIELD-NOTES AND MAPS —
EJECTMENT. — The action was brought to recover the possession of a
strip of land lying along the boundary line of two adjoining ranchos
severally owned by the respective parties under patents from the United
States. The question at issue was as to the location of the boundary
lines of the two ranchos. On a review of the field-notes and maps of the
official surveys, *held,* that the boundary line of the respective ranchos at
the place in controversy was a line common to each, and that the *locus
in quo* was included within the land patented to the defendant.

APPEAL from an order of the Superior Court of Santa
Barbara County refusing a new trial.

The facts are stated in the opinion of the court.

*R. B. Canfield,* and *A. Packard,* for Appellant.

*W. C. Stratton,* for Respondents.

THORNTON, J. — This is an appeal from an order deny-
ing a new trial in an action of ejectment, in which the
main question is the location of the boundary line be-
tween two ranchos,—Jesus Maria and La Purissima.
The line in controversy is a part of the east line of the
former ranch, and the west line of the latter. Both par-
ties claimed under patents from the United States,—

that of the Jesus Maria dated 7th of September, 1871, and that of the Purissima, 12th of October, 1882. The court must have found that the evidence showed the western boundary of the Purissima was on a line farther west than that contended for by the defendant, appellant here.

The cause was tried by the court, and it is urged that the evidence is insufficient to justify the decision. The findings of the court were of the most general character, viz., that the plaintiffs were, at a day anterior to the commencement of the action, owners and seised in fee and possessed of the land in suit, and that defendant had wrongfully, etc., ejected them from such possession. The specifications of the insufficiency of the evidence to justify the decision are also general. But they are aimed at the findings. They assert that the evidence is insufficient to show that the plaintiffs, or either of them, was the owner, etc., or that defendant ever ejected the plaintiffs, etc., from the land; following the findings. And it is said on behalf of plaintiffs (respondents here) that the specifications are insufficient, inasmuch as they do not state the particulars in which the evidence is insufficient. But as the findings are general, and the specifications follow them, we think they should be held sufficient. This conclusion is sustained by the ruling of this court in *Morris* v. *De Celis*, 51 Cal. 60, and *Du Brutz* v. *Jessup*, 54 Cal. 118. Though some of the cases subsequently decided are not in accordance with those above cited, still they have not been overruled, and are still authority here. Counsel, however, by following *Eddelbuttel* v. *Durrell*, 55 Cal. 277, would obviate all difficulty on this point, and be secured in having their cases considered. (See also *Kelly* v. *Mack*, 49 Cal. 523, and *Doherty* v. *Enterprise M. Co.*, 50 Cal. 187.)

The respondent states in his points that it is admitted that the patent of the Purissima, under which the plaintiffs claim, includes the land in dispute. He does not

point out the admission, and after careful examination we are unable to find it in the record. It would be strange if the counsel adversary to plaintiffs had made such an admission, as it involved the very matter in dispute, and on which the defendant's case turned. We find no such admission; but we find, from the field-notes and maps of the official surveys of the ranchos named, that just where the land in dispute is located the line between the two ranchos is a line common to both; that the entire west line of the Purissima is common with a portion of the east line of the Jesus Maria. That the two ranchos are coterminous from station 24 to station 26 of the Purissima there can be no doubt.

We insert here, side by side, the field-notes of both surveys as to those lines:—

PURISSIMA RANCHO.

"22. Thence north forty-two degrees forty-five minutes west, at fourteen chains and fifty links intersects line between ranges thirty-four and thirty-five west, township seven north, of the San Bernardino base and meridian, twenty-eight chains and forty-three links south of corner to sections thirteen, eighteen, nineteen, and twenty-four; twenty-seven chains thirty-five links to elder tree six inches in diameter standing on edge of mesa near bluff bank of river, and marked L. No. 23, station 23; thence north fifty-four degrees forty-five minutes west, thirteen chains and forty links to elder post in mound marked L. No. 24, station; thence along the eastern boundary of the Rancho Jesus Maria, as patented on corrected line 24 north, forty-three degrees east, up the valley of the Santa Lucia at forty-eight chains and sixty links, leaves the valley and ascends hills, course northeast and southwest, seventy-one chains and ten links, to elder post in rock mound on side hill, facing northeast for corner No. 5, of the Rancho Jesus Maria, and marked M. L. P.

JESUS MARIA RANCHO.

"2. S. 26¼° E. Over chemisal hills at 72 chains to San Antonio Creek, 20 lks. wide, course west at 79.15 chains. Intersected east boundary of township 8 north, of range 35 west, 10 chs. 15 lks. south of the corner to sections 1, 6, 7, and 12, at which point I set a charred post and raise mound of earth with trench and pits, 301 chains set post No. 3, on a hill near a place called San Antonio, with a mound of rocks, as instructed. Station.

"3. S. 24° E. at 94 chains leave the hills and enter the valley of Santa Lucia, and continue down the valley 135 chains. Mark as No. 4 a live-oak 28 in diameter, as instructed. Station.

"4. S. 25¾° W. Down the valley of Santa Lucia at 74.13 chains intersected the south boundary of T. 8, N. R. 34 W. 41.00 chs. east of corner to sections 5, 6, 31, and 32, and set post, and raised a mound of rocks, at place of intersection at 115 chains the Santa Lucia house bears west distant about 20 chains 287 chains, set a post No. 5, and raised a mound of rocks, as instructed. Station.

No. 25 for corner station 25; thence north twenty-five degrees forty-five minutes east, two hundred and eighty-seven chains, to post on top of chemisal hill on southeast side of Santa Lucia valley, from which a live-oak post in mound and pits marked W. P. J. M. No. 4 and P. 26 for witness post to corner 26, bearing north twenty-four degrees west, eleven chains and fifty links distant, and from which a live-oak tree bears south twenty-one degrees thirty minutes west, sixty-three links distant station."

"5. S. 43° W. At 41 chains intersected the west boundary T. 7 north, R. 34 west, 1,816 chains north of the corner to sections 13, 18, 19, and 24, and set a post, and raised a mound, with charcoal deposit trench and pits, as instructed, 90 chains to the right bank of La Purissima in Santa Ynez River, 92 chains, to a point in the middle of the river-bed, station. This not being a suitable place to establish a corner, I mark a cottonwood tree for witness corner, which bears N. 43° E., distant 227 links from true corner."

There follow here traced copies of the lines referred to, taken from the maps. The one on the right is the line of the Jesus Maria, the other that of the Purissima.

The field-notes above given as to each ranch commence with the course ending at the point of beginning of the disputed line, and the course preceding that.

The Purissima's west line reaches the Jesus Maria's east line at station 24. From that point it runs to station 25,—a distance of nearly half a mile (71 chains 10 links). It will be observed that the survey of the former (Purissima) is made going in a course northeast and southwest; that of the latter (Jesus Maria) in the opposite direction. The angle with the meridian at which those lines are run is the same,—north 43° east in Purissima, and south 43° west in the Jesus Maria. The words and figures are reversed, for the reason, above given, that the surveyors were doing the work in opposite directions. The same is true of the next line from station 25 to station 26 on the Purissima. The angle on line going north on both ranchos is the same. In former (Purissima) is north 25° 45' east; in latter (Jesus Maria) south 25° 45' west,—figures denoting angle reversed as above. The length of the line between these stations is 287 links. The north part of this line on the Jesus Maria is 287 links in length. The end of course 24 is station 25. This course 24, before it reaches station 25, has been running 71 chains 10 links on the Jesus Maria as patented. It ends at a post on a rock mound, as above stated, on a side hill for corner No. 5 of Jesus Maria. Can there be any doubt that here is the station 5 of the Jesus Maria, and that the line from 25 to 26 in the Purissima, and from 5 to 4 in the Jesus Maria, commences at the same point, runs at the same angle, and are of the same length, —287 chains? The conclusion is irresistible that the line between the above points is the same, and that the west line of the Purissima and the east line of the Jesus Maria are the same.

There is one controlling monument in the field-notes of the Jesus Maria survey. This is the Santa Lucia house. The existence of this house is testified to by the witness Harris, called by plaintiffs, and by Jesse, Lewis, and Cooper, called by defendant. The field-notes of the Jesus Maria show that the survey was made in 1859; and

Lewis, who assisted in making it, says that it was then occupied by Burton. It is stated in the field-notes of the Jesus Maria that this house is west of the line of that ranch, and distant from it about twenty chains. This house is a monument, as a witness-tree is a monument. The map and the objects on it are to be regarded. (See *Vance* v. *Fore,* 24 Cal. 435; *Serrano* v. *Rawson,* 47 Cal. 55; *Black* v. *Sprague,* 54 Cal. 266; *McIver's Lessee* v. *Walker,* 9 Cranch, 173; *Chapman* v. *Polack,* 70 Cal. 487.) It is a *witness-house* called for in the field-notes, and delineated on the map and field-notes, which are in the patent, constituting a part of it.

Nor is there any testimony which is contradictory to the views above presented. The testimony of the witness Harris is based on a view of the matter in dispute entirely theoretical and arbitrary, and outside of the facts in the case established by documents made contemporaneously with the surveys of both ranchos, and which cannot be gainsaid.

The surveyor (Norway) who made the survey of the Purissima must have run the common line, and found it correct, or he must have adopted it from the survey of the Jesus Maria made by Norris. In either case it is binding on the plaintiffs, who claim under the patent of the Purissima, into which this survey went, as shown by the map; and in either case the correctness of this common line, as disclosed by the maps and field-notes of the Jesus Maria, is acknowledged. The plaintiffs then are bound by this common line described in the Jesus Maria field-notes, as running about twenty chains east of the Santa Lucia house. The existence of the house at the time of survey of the Jesus Maria is established, as well as at the time of the trial, is spoken of in the testimony as the ranch-house of the Jesus Maria, and shown to have been occupied for several years. Its location is shown on the map. The survey of the Purissima was, under these circumstances, accepted with this call for the house, and its

distance from the common line. We think the word "about," under these circumstances, should not lessen this distance of twenty chains, and that the distance of the house should be fixed at twenty chains, regarding the house as a monument. The fact that the application of a graduated scale to the map shows the distance of this house from the line to be twenty chains confirms the propriety of disregarding the word "about." This application of the scale is allowable and proper, for the reason that the surveys are official, and made accurately on a scale of forty chains to the inch. It should also be borne in mind in this connection that the survey of the Purissima as to this common line is subsequent to that of the Jesus Maria, and based on it. Then running a line due east from the house a distance of twenty chains, and then a line through the point so reached in the course designated on both maps, will fix the common line correctly. The plaintiffs can recover nothing west of this line.

It may be added here that the application of the graduated scale to both maps, which were made on the same scale, will show the distance of the corner of the sections 31, 32, 5, 6, township 8 north, range 34 west, from the common line, to be on the Jesus Maria map forty chains, and on that of the Purissima forty-four chains,—four chains farther east than shown on the first-mentioned map.

In the field-notes of the Jesus Maria it is stated that the eastern line of the rancho, so called, intersects the south boundary of township 8 north, range 34 west, forty-one chains east of corner to sections 5, 6, 31, and 32, where a post was set and a mound of rocks raised. The above are delineated on the Jesus Maria map. The point of intersection is stated to be 74.13 chains from corner No. 4 of the survey. The above calls are all delineated on the map. As to this, Harris says: " I did not find the corner to sections 5, 6, 31, and 32. I found the first half-mile corner to the east of that point; and ran thence west

47 chains 10 links; thence northeasterly on ranch boundary, 76 chains and 48 links, to come to my corner No. 4 up to the post I set. The intersection of the Purissima line, as I ran it, with the township line, occurs 32 chains 90 links east of the corner to sections 5, 6, 31, and 32." While the corner of these sections could not be found by Harris, he did fix it at 32.90 chains west of the Purissima line. When he did fix it, he only ran 32.90 chains east. According to the testimony, he looked for and found the first half-mile corner to the east of the sections' corner, then ran west from that point 47.10 chains; thence ran northeasterly *on the ranch boundary* 76.48 chains, to come to corner No. 4, to the post he set.

Certainly a line drawn from a point 47.10 chains north of the corner of these sections would not be on the ranch boundary. The boundary lay east of this corner, not west. Still he was 47.10 chains west of the point, and then from that point obtained by westing, by going away from the ranch boundary, he says he ran northeasterly on the ranch boundary to his corner No. 4. The reference here is to corner No. 4 of the Jesus Maria. This was the only corner No. 4 he had referred to. It is not surprising that the real corner No. 4 was not found, and how a line starting from the point he says he did would run northeasterly along the ranch boundary passes comprehension.

Harris also speaks of corner No. 4 of the Jesus Maria and No. 23 of the Purissima as the same. In this the maps show that he is in error. According to them, No. 4 of the former corresponds to No. 26 of the latter. Harris's survey was made in disregard of the calls of the Jesus Maria plat and field-notes, which, as the line he was seeking to fix was a line common to both ranchos, he should have regarded. And especially should this have been done when the survey of the Purissima was subsequent to that of the Jesus Maria, as the line in dispute was based on it.

Thompson's testimony relates to a part of the line of

the Jesus Maria not in dispute here. The testimony of the other witnesses is clearly against the findings.

The findings of the court below are not sustained by the evidence as to any land west of the common line as herein laid down, and on that ground the order must be reversed. As to the evidence in relation to general repute on the subject of the boundary of the Jesus Maria, which was ruled out, in the view taken herein, it is unnecessary to pass on it, and therefore we notice it no further. As to the other points urged there is no error. But for the reasons above given, the order denying a new trial is reversed, and the cause is remanded, with directions to the court below to set aside the judgment and order a new trial, and that such new trial may be had in accordance with views herein expressed.

McFARLAND, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.