[Civ. No. 8667. First Appellate District, Division Two.---February 23, 1933.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. E. DUNCAN et al., Respondents.

THE CITY of LOS ANGELES (a Municipal Corporation), Appellant, v. PRINCE DAVID ZAHARI M'DIVANI et al., Respondents.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Joseph T. Watson, Deputy City Attorney, for Appellant.

Loeb, Walker & Loeb and Mark S. Feiler for Respondents.

GRAY, J., *pro tem.*—In each of these consolidated cases the City of Los Angeles, as successor of the city of Venice, to which tide lands, within its then territorial limits, had been granted by Statutes 1917, page 89, sued to quiet its title to a portion of such tide lands, lying oceanward of the seaward boundaries of the properties of the respective respondents. Such tide lands are situated on the Pacific Ocean at Playa Del Rey about 26 miles northwesterly from the entrance of Los Angeles harbor and lie adjacent to and northwesterly of a narrow inlet through the beach of Santa Monica Bay into a lagoon. Respondents' disclaimer of any title to tide lands narrowed the dispute to the location on the ground of the line of mean high tide, which, concededly, fixed the boundary between the city's tide lands and respondents' property. Omitting, as immaterial for present purposes, the northwesterly and southeasterly boundaries, which differed in each case, the court found and decreed that the city owned the tide lands "adjacent to and southwesterly of the southwesterly line of Block E, Portion of Playa Del Rey Townsite, as per map recorded in Book 7 of Maps, at page 130 thereof, records of Los Angeles County; said southwesterly line of said portion of Block E being fixed as a line distant 139 feet southwesterly from the northeasterly line of Marine Walk, as shown on said recorded Map". In effect, the court established the boundary line, first by determining it to be the southwesterly line of block E and secondly, locating such line by fixing

its distance from the "Marine Walk". Appellant not only does not quarrel with the establishment of such southwesterly line as the boundary, but argues strenuously therefor. But it does contend that its distance from the "Marine Walk", which is not stated on the map, should have been established solely by scaling. By this method, such distance is approximately 36 feet, making a difference laterally from that found by the court of approximately 103 feet.

Among the several maps introduced by appellant was the one referred to in the finding and judgment and which had been prepared and recorded by respondents' predecessors in title. This map, drawn to scale, depicts a subdivision with various streets, including "Marine Walk", blocks and lots, having designated locations and dimensions. Waterward of "Marine Walk" appears an area denominated as "Block E", bounded on the southwest by an undescribed sinuous line, which appellant claims is the line of mean high tide. In support of this conclusion, appellant relies upon the position of this line and to its similarity of location with a line upon a previous map of this subdivison which is expressly called the line of mean high tide. In contradiction, respondents produced the maker of the map, who testified that he did not use the previous map, that he did not draw the line from measurements, but drew it, haphazardly, merely to indicate that there was land on one side and water on the other. ▮ Citing cases, of which *Chapman* v. *Polack*, 70 Cal. 487 [11 Pac. 764], is typical, to the effect that a map referred to in a deed is to be regarded as giving the true description of the land conveyed and that lines and natural objects, shown on such map, form part of the description, appellant argues that the location of the sinuous line is to be solely fixed by measuring its distance from the "Marine Walk", according to the scale of the map. (*Wise* v. *Burton*, 73 Cal. 166 [14 Pac. 678].) This rule, which has been codified in section 2077, subdivision 6, of the Code of Civil Procedure (*Miller* v. *Grunsky*, 141 Cal. 441 [66 Pac. 858, 75 Pac. 48]), applies to the construction of an ambiguous description in a deed where the deed refers to a map and the parties have acted with reference to such map. Since no construction of such a deed is here involved, this rule is inapplicable. However, such maps, being declarations of respondents' predecessors

in title, were evidence against them (Code Civ. Proc., sec. 1849), but were not conclusive and merely raised a question of fact. (*MacGregor* v. *Knowlden*, 102 Cal. App. 42 [282 Pac. 438].) ▋ The map itself, together with its maker's explanation, shows that the sinuous line was intended as a meander approximately locating the line of mean high tide. Therefore the line of mean high tide, as it actually existed on the ground, rather than this meander line, constituted the real boundary. (*Curtis* v. *Upton*, 175 Cal. 322 [165 Pac. 935]; *Los Angeles* v. *San Pedro etc. R. R. Co.*, 182 Cal. 652 [189 Pac. 449].)

▋ The court first located the boundary by adopting the southwesterly line of block E as shown on the map. While the map does not state, in words or figures, the distance between such line and the "Marine Walk", its scale provides the method for establishing such distance as approximately 36 feet. (*Wise* v. *Burton, supra.*) Secondly, the court fixed such distance as 139 feet. The location of the line, as shown by the map, conflicts with its location as fixed by the court, thereby creating a patent ambiguity in the description, which is fatally defective. (*Anaheim Sugar Co.* v. *County of Orange*, 181 Cal. 212 [183 Pac. 809].) Furthermore, there is no evidence from which the court could have fixed this distance. It is true that respondents' witness fixed the line of mean high tide a few feet seaward of the line, located by the court, but such testimony did not attempt to fix this line of block "E". While the court might have accepted this testimony and established the line of mean high tide, in accordance therewith, as the boundary, it did not do so but first adopted a line as shown by the map as the boundary and then located the same line, without testimony, at a place 103 feet waterward from the location shown by the map.

▋ Counsel, in their respective briefs, have extensively discussed the weight and effect of two United States Coast and Geodetic Surveys of 1876 and 1887 and testimony based thereon and derived therefrom. In view of the necessity, otherwise, of a new trial when the evidence may differ, no useful purpose will be served by reviewing and discussing this evidence but it will suffice to state the principle applicable thereto. Such maps are *prima facie* evidence of the facts shown thereon but the weight and effect to be given

thereto is a question of fact for the court. (*City of Oakland* v. *Wheeler,* 34 Cal. App. 442 [168 Pac. 23].)

The judgment is reversed.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1933, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 24, 1933.