HORNE *v.* HOWE LUMBER COMPANY.

4-7571                                                    190 S. W. 2d 7

Opinion delivered October 29, 1945.

*Robert A. Zebold* and *E. W. Brockman,* for appellant.

*Rowell, Rowell & Dickey,* for interveners.

*Daggett & Daggett,* for appellee.

SMITH, J. Appellant commenced this suit by filing a petition for an order restraining appellee, Howe Lumber Company, hereinafter referred to as Lumber Company, from cutting the timber on northwest quarter, northwest quarter; southeast quarter, southwest quarter, and southwest quarter, northwest quarter, section 14, township 7 south, range 5 west, Jefferson county, Arkansas. In response to a motion that the petition be made more specific, it was alleged that appellant had title to the timber on these lands under a timber deed executed to him by Mrs. Dora Dean, who had obtained a deed from the State Land Commissioner for these lands, based upon a forfeiture and sale thereof to the State for the non-

payment of the general taxes due thereon for the years 1925 and 1927. In the final decree, from which is this appeal, this tax sale was adjudged to be void for the reason that excessive costs had been charged, and that finding appears to be fully sustained.

Appellant says, however, that appellee should not be permitted to question the validity of the Land Commissioner's deed, for the reason that appellee claims no interest in the lands which the deed describes, and he quotes the provisions of § 13874, Pope's Digest, to sustain that contention. This section provides that, ''But no person shall be permitted to question the title acquired by a deed of the clerk of the county court, without first showing that he, or the person under whom he claims title to the property, had title thereto at the time of the sale, or that title was obtained from the United States or this State after the sale, and that all taxes due upon the property have been paid by such person, or the person under whom he claims title as aforesaid.''

It was held, however, in the case of *St. Louis Refrigerator Co.* v. *Thornton*, 74 Ark. 383, 86 S. W. 852, that this statute was limited in its operation to deeds made by the county clerk, and does not embrace deeds made by the Commissioner of State Lands to lands forfeited for taxes, and that the legislature had not seen fit to protect the deeds of the Land Commissioner in the manner it had protected the deeds of the county clerks.

This ruling did not dispose of the litigation, however, for the reason that the lumber company filed an answer and cross-complaint in which it was alleged that the timber in question had not been cut from lands in section 14, township 7 south, range 5 west, but had, in fact, been cut from accretions to fractional section 30, township 7 south, range 4 west. This fractional section 30 is also referred to by the witnesses as Island No. 30 and as Billings Island.

It very clearly appears that the timber was cut from accreted land, and the controlling question in the case is the one of fact, to what land did the accretions form? The

court found the fact to be "that the land in controversy is not, as a matter of fact, section 14, township 7 south, range 5 west, north of the Arkansas River in Jefferson county, Arkansas, but, to the contrary, is accretions to section 30, township 7 south, range 4 west, Lincoln county, Arkansas; section 14, township 7 south, range 5 west, Jefferson county, Arkansas, having been washed away and destroyed by a gradual change in the Arkansas River sometime subsequent to the year 1825."

The date 1825 is the time when the government survey was made and the land was divided into sections by that survey. The map or plat of the original survey of 1825 shows Billings Island to be a small carrot-shaped tract lying in the Arkansas River, and surveyed as fractional section 30, township 7 south, range 4 west, 49.30 acres, plus 1.62 acres on its western tip in section 25, township 7 south, range 5 west, and .68 acres in section 31, township 7 south, range 4 west. It shows the main channel of the river north of the island, with the southern chute of the river nearly blocked by a bar or tow-head. This is especially important as the next map of the survey of this area, made in 1886, shows the chute to have been completely filled up, and Billings Island to have become completely attached to section 31, and is a part of the south bank of the Arkansas River.

The record is very voluminous. Four surveyors testified in the case, and maps of these surveys are in the record, together with maps of the geodetic survey made by the federal government. In addition numerous lay witnesses testified. The trial judge summarized the testimony with a statement that, "While the testimony is in a state of hopeless irreconcilability, I am convinced that the preponderance thereof shows this land, the land in litigation, and from which the timber was cut, to be accretions formed to section 30, township 7 south, range 4 west, Lincoln county, Arkansas, by a gradual change in the Arkansas River, beginning sometime subsequent to the year 1825. I am strongly persuaded that this opinion is correct by reason of the government plats that have been introduced in the record as exhibits to the testimony of various witnesses who testified."

It is difficult to understand the testimony in this case even with the aid of the numerous maps, with reference to which the witnesses testified, and impossible to follow without their use. It is said in Holy Writ, "That the wind bloweth where it listeth," and it may also be said that the Arkansas River, in the *locus in quo,* runs in the same direction. In the more than a century since the original government survey, the river has changed its course many times, and in addition to many accretions there have also been several avulsions.

We repeat that it is difficult to understand the testimony and find it impossible to reconcile it, as much of it relates to the vagaries of the river at times beyond the memory of living witnesses. There is, however, certain testimony which largely influences our conclusion that the finding of the court is not contrary to the preponderance of the evidence. First, the plat of the original survey made by the federal government in 1825. Also certain geodetic surveys made by corps of engineers of the War Department. These government surveys were objected to upon the ground that they were not properly authenticated, and are at best only hearsay evidence.

We do not agree. These surveys were prepared by the War Department and were admissible in testimony without other proof of their accuracy. It was held in the case of *City of Los Angeles* v. *Duncan,* 130 Cal. App. 11, 19 Pac. 2d 289, that: "Such maps are *prima facie* evidence of the facts shown thereon, but the weight and effect to be given thereto is a question of fact for the court."

In the case of *Bost* v. *United States,* 103 Fed. 2d 717, a headnote reads as follows: "Printed maps prepared by the United States Department of Agriculture Forest Service and United States Geological Survey were admissible to show nonexistence of topographic features alleged by defendant to exist, under exception to hearsay rule applicable in cases of necessity and circumstantial guaranty of trustworthiness."

The case of *United States* v. *Romaine,* 255 Fed. 253, recites that the trial court said of certain hydrographic

maps made by the United States Coast and Geodetic Survey, "I do not think that the hydrographic maps are of any weight in this testimony in contradiction to the evidence that is presented." It was said by the court of appeals, Ninth Circuit, on the appeal of that case, "We think the maps should be given full credence, and should be taken as absolutely establishing the truth of all that they purport to show." We do not consider the weight or effect to be given these maps, but we do hold that they were competent evidence.

Other testimony highly persuasive was that given by I. Bankston, who made a survey and map of this area before any controversy arose between the parties to this litigation. His survey was made to settle the lines between Weeks Bros. who intervened in the case, Mr. Sloan and Mrs. Dean, through whom appellant claims. Bankston's testimony is corroborative of that of H. S. Nelson, a member of the firm of Howe Lumber Company, appellee, who was himself a graduate civil engineer, concerning the maps offered in evidence.

The finding by the court that the timber was cut from lands now a part of section 30, township 7 north, range 4 west, cannot be said to be contrary to the preponderance of the evidence, at least we do not find it to be so. But appellant says that if this is true, the enlargement of Billings Island resulted from two changes in the course of the river, not from slow and imperceptible accretions, but by sudden and plainly visible avulsions, and this is another way to state the disputed and controlling question of fact.

The law of this phase of the case is not in dispute and is stated as follows in the case of *Kansas City Fibre Box Co.* v. *F. Burkart Mfg. Co.*, 184 Ark. 704, 44 S. W. 2d 325:

"As was said in the case of *Nix* v. *Pfeifer, infra*: 'The law governing the case is clearly established and entirely free from difficulty, and we need search no further than the decisions of this court to determine the rights of riparian landowners so far as the questions involved in this suit are concerned.

" 'Land formed by gradual and imperceptible accretion or by gradual recession of the water, belongs to the owner of the contiguous land to which the addition is made. The river line is the natural boundary, and its gradual advance or retreat carries the owners' line with it, except in case of an avulsion, or sudden or perceptible change in the water course, in which latter case the line remains at the old water line, and becomes fixed by it, not subject to further change by the caprice of the river.' *Nix* v. *Pfeifer*, 73 Ark. 199, 83 S. W. 951."

Under this statement of the law, we think, as was found by the court below, that the timber was cut from accretions to section 30, township 7 north, range 4 west.

As has been said, this suit was begun by appellant Horne, seeking a restraining order against the lumber company. The answer filed by the lumber company made no claim to the land on which they were cutting timber, but claimed only the timber 14 inches and over in diameter standing thereon. This claim is based upon a timber deed from R. G. and Pleas Weeks, sons and sole heirs at law of R. G. Weeks, Sr. The Weeks brothers filed an intervention and adopted the allegations of the answer filed by the lumber company, and pray judgment for the value of timber 13 inches and under cut on the land. The court made an order August 16, 1943, that plaintiff, Horne, should cut the timber and account to the court for the stumpage at the rate of $10 per 1,000 feet.

In the intervention of Weeks Bros. damages to the lands were claimed, but as we understand the effect of their subsequent pleading, this demand was abandoned, and only the stumpage value of the timber was sued for. At any rate, this is what the judgment was rendered for, it being that the lumber company and Weeks Bros. "do have and recover of and from the plaintiff, J. M. Horne, the sum of $1,760.70 together with all their costs," which judgment was later amended to include interest from the date of the rendition of the judgment.

The judgment does not declare what part of this recovery shall be for the benefit of the lumber company,

or for the interveners, but they do not complain of that fact, and appellant is in no position to do so. It is insisted that the title to the land was not sufficiently proved to sustain this judgment, but we think it was. By an unbroken chain of conveyances, title was deraigned from the United States to the ancestor of Weeks Bros. But if this be not true, it was shown that the ancestor of Weeks Bros. died in possession of Billings Island, claiming title thereto, and that this possession had continued for a period of more than 40 years. Appellee R. G. Weeks testified that he and his brother had been in continuous possession of this property since 1904, and that the only adverse claim ever made by anyone related to the boundary line on the east side, with Mrs. Dora Dean, which was settled by the Bankston survey; that the property had been continuously fenced on three sides, with the river as the north boundary, since 1914, and that he had personally sold three or four crops of timber off of this same property.

After selecting the chancery court of Jefferson county as the forum in which to try the case, appellant now says that the finding of the court that the land in question is an accretion to section 30, township 7 north, range 4 west, Lincoln county, defeats the jurisdiction of the Jefferson chancery court. Pretermitting any discussion of the right of one to deny the jurisdiction of a court whose aid he had invoked, a sufficient answer to that contention is that appellees disclaim any damages to the land, but seek to recover only the value of the timber which appellant cut under the order of the court permitting him to do so. In other words, appellant was permitted by the order of the court to cut the timber under an agreement to respond in damages if it were found that he was not the owner. This makes the action for damages transitory, one which could be brought against appellant in any jurisdiction where service upon him could be had.

The decisions of this court distinguishing local from transitory actions in suits of this character are reviewed in the case of *Western Union Tel. Co.* v. *Bush,* 191 Ark.

1085, 89 S. W. 2d 723, 102 A. L. R. 367, where it was said: ''It seems to us that the owner of this timber would have his right or election to sue for damage to the real estate, or for the conversion of whatever timber was taken away. Certainly, if he sued for damage to the real estate, he must sue in the county in which it was located and in the proper court. If he sued for a conversion of the timber, his suit could be filed and maintained as other transitory cause of action. That is the distinction made in the case of *Jacks* v. *Moore,* 33 Ark. 31, and *Emerson* v. *Turner,* 95 Ark. 597, 130 S. W. 538.''

The court found that under its consent order appellant had cut and removed 176,070 feet of timber, and the judgment was based upon that finding. Appellees have appealed from that finding, it being their contention that a much larger quantity of timber was cut. In the opinion prepared by the court below, upon which the decree is based, appears this statement: ''Now, as to the damages, the witness, I. G. Lockhart, on behalf of the defendant, testified that before any cutting was indulged in there were 320,000 feet of standing timber, 14 inches and up, on the land. The plaintiff, J. M. Horne, testified that he only cut 176,070 feet, and I accept his statement of the timber cut and removed from this land by him as being the more accurate of the two for the reason that parties other than himself might have cut timber from this particular land, even if there were 320,000 feet of standing timber, 14 inches and up, thereon at the beginning, or before the plaintiff cut any timber whatever from the land in litigation; and, as it was stipulated between counsel for all parties that the value of the timber was $10 per thousand, the defendant, Howe Lumber Company, and the interveners, R. G. and Pleas Weeks, will be awarded judgment against the plaintiff in the amount of $1,760.70.''

Being unable to say that this finding is contrary to the preponderance of the evidence, it too is affirmed.

A number of other questions are raised and discussed in the briefs of opposing counsel and have been

considered, but we think their decision is not necessary to dispose of this appeal. The decree is, therefore, affirmed, both on the direct and cross-appeal.