CROW *v.* JOHNSTON.

4-7855                                             194 S. W. 2d 193

Opinion delivered April 15, 1946.

Rehearing denied May 27, 1946.

*George K. Cracraft,* for appellant.

*Daggett & Daggett,* for appellee.

HOLT, J. Appellee brought this suit to quiet his title to land claimed as an island in the Mississippi River.

He alleged in his complaint and amendment thereto that he owned "all of a certain towhead (designated as 'Island 62 towhead') between Islands 62 and 63, in the

Mississippi River, adjoining and a part of section 36, T. 4, S., R. 3 E., 1,000 acres,'' in Phillips county, Arkansas.

He further alleged ''that he, and those under whom he claimed title, have heretofore paid state and county taxes on said described lands, . . . continuously for the years 1911 to 1931 inclusive, a period of more than fifteen years, under color of title thereto; and plaintiff pleads the provisions of §§ 8920, Pope's Digest, (Act March 18, 1899), and 8921, Pope's Digest, (Act March 27, 1929), as a complete bar to any right, title, claim or interest of the defendants in and to the said described lands.''

He further alleged, and claimed title under a deed from the State Land Commissioner on August 4, 1940, (under the Acts of Arkansas of 1917, Vol. 2, p. 1468, commonly called the Island Act), in which the land is described as ''the whole of 'Island 62 towhead' heretofore mentioned and lying and being situated south and east of Island No. 62 in the Mississippi River and located in sections thirty-five and thirty-six, in township four south, of the base line in range three east of the Fifth Principal Meridian, in Arkansas and section two, in township five south, of the base line in range three east of the Fifth Meridian, in Arkansas in Phillips county, Arkansas, (170.6 acres) and more particularly described as follows, to-wit:'' (Then follows a metes and bounds description of 170.6 acres.) He further pleaded laches.

Appellants answered with a general denial and by way of cross-complaint, asserted (quoting from appellants' brief): ''that defendants were the owners and in possession of fractional sections 35 and 36; that they had paid taxes thereon for a long period of time; that the area described in the complaint was, in fact, formed as 'accretions' to sections 35 and 36 and that by virtue of the payment of taxes on the original land in sections 35 and 36, they had, in fact and in law, paid taxes on the accretions. They further alleged that the lands described in the deed from the State Land Commissioner to plain-

tiff, although purporting to be a deed to an island, covered an area representing true accretions to sections 35 and 36; that the deed constituted a cloud upon the title of defendants (because said area was in fact accretions) and prayed that the deed from Mr. Lucy and Mrs. Burke (the devisees of R. C. Burke) to the defendant, and the deed from the Commissioner to the defendant be canceled as clouds on their title."

The trial court, after a patient and extended hearing, found the issues in favor of appellee, and from the decree comes this appeal.

The primary question presented, and which, in effect, is decisive of this case, is the one of fact, whether the land in controversy formed as an island, or by way of accretions to the south shore of Island 62, which belongs to appellants.

It is conceded that in cases of this character appellee must prevail on the strength of his own title and not upon the weakness of his adversary. (*Nix* v. *Pfeifer*, 73 Ark. 199, 83 S. W. 951.)

The rule is equally well established that while the cause comes to us for trial *de novo*, we must affirm unless we can say that the findings of the trial court are against the preponderance of the testimony. (*LeCroy* v. *Sigman*, *ante*, p. 469, 191 S. W. 2d 461.)

The record is voluminous, comprising some 300 pages of maps, charts and testimony, and we can do little more than set out here the effect of the evidence as we view it.

After reviewing all of the testimony, we have reached the conclusion that the findings of the court below and the decree based thereon, are against the preponderance thereof.

At the outset, it may be said that the evidence introduced fell within three types, charts and maps of United States engineers and of the Mississippi River Commission, the testimony of lay witnesses who had lived for a long number of years in the immediate vicinity of the lands involved, and that of other experienced engineers.

Island 62 owned by appellants, according to the maps and charts, was in existence as early as 1835, prior to Arkansas' admission to the Union in 1836, and this island has continued in existence as land in place until the present; also the "Island 62 towhead," involved here, was an island in 1835, lying south and east of Island 62 and existed as such until some time in 1912 when the testimony showed that it completely disappeared or had been cut away by the actions of the Mississippi River current. A third island, 63, also existed at the time above mentioned and lay immediately south of "Towhead 62" on the east side of the Mississippi River and this island still exists.

It was the theory of appellee, and the chancellor so found, that "Island 62 towhead" in 1912, by accretions built on to it to the north and northwest, gradually expanded and grew until it reached the shoreline of Island 62, and that the land described in the State Land Commissioner's deed, *supra,* lies within this accreted area.

We think, however, that the great preponderance of the testimony is against this theory. All of the maps and charts made subsequent to 1912 that were introduced, and especially those prepared by the Government engineers and the Mississippi River Commission, disinterested parties here, demonstrate that "Towhead 62" never reformed. Nowhere on any of these maps does any channel, chute, arm of the river or living stream of water appear separating the alleged reformed towhead from 62. In effect, the contrary is shown. The Jack's map made in 1925, strongly relied upon by appellee and which was largely used as a guide by Mr. Green who surveyed the land for the State Land Commissioner, does not show any channel or chute separating Island 62 on the south and east from land alleged to be the original "Towhead Island 62." The only evidence on this point is that there appeared to be a depression 75 to 100 feet in width close to the high bank of original Island 62 and extending out at a 45° angle across the sand bar in a southerly direction which filled with water when overflows occurred. This depression, however, fell far short of constituting a defi-

nite chute or arm of the river separating Island 62 from the alleged towhead. The preponderance of the testimony of the lay witnesses is to the same effect.

A summation of the testimony of the two highly trained and experienced engineers, Richardson and Parmalee, is embraced in the following testimony of Parmalee: "After studying this whole question, together with the maps extending over 100 years and recent examinations, that it is definitely concluded that the area described in the deed from the State Land Commissioner to the appellee are accretions formed from the shore of Island 62 proceeding outwardly into the stream and not accretions inwardly from an island or towhead to the shore of Island 62; that 'as a matter of public land description these lands adjacent to the original Island 62 should be described as being accretions to fractional sections 35 and 36, township 4 south, range 3 east.'"

The testimony of the lay witnesses, many of whom lived on Island 62 and were familiar with the actions of the Mississippi River since Towhead 62 disappeared in 1912, tends to corroborate this testimony. The testimony of all the witnesses who testified on accretion formations was to the effect that accretions are formed downstream and not upstream. Appellee himself so testified in effect: "A towhead always builds downstream, because an eddy gets in there and that will build up around a root." These physical facts strongly support the theory of appellants that the land in question was formed by accretions on the south of appellants'.holdings on Island 62.

Robert Moore, whose testimony was corroborated by other witnesses, testified that he was 63 years old, had lived in the vicinity of the land all of his life and now lives about seven miles from Island 62; that in his younger days, a towhead (meaning "Towhead Island 62") in the Mississippi River lay between Islands 62 and 63; that boats ran up and down the chute and they would go in high water time because there was a fairly good channel then and the channel lay next to the towhead and that it did not lay next to the main bank of Island 62 be-

cause a sand bar had filled out from the main island going east as this sand bar moved out from Island 62; that the towhead was caving at the head and before the towhead went completely out this sand bar had made out from the Twitty Island (conceded to be another name for Island 62) and in extreme low water almost went across in a bar of white sand to Towhead 62 and then when they put in the dike water came in from the Oldtown Bar; that the dike and the main channel of the old river built up and threw the current this way "and all that towhead started away." It went out in three or four years; that after that towhead went away no other towhead ever came back.

The testimony shows, as noted above, that "Towhead Island 62" had completely washed away by 1912, and that a towhead is an island.

We have many times held that title to land carried with it all accretions formed or made prior to the convey- ance, as well as after, though not mentioned in the deed of conveyance. It appears, however, that the deed to John D. Crow from whom the appellant inherited the land here, contained the words "and all accretions." *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299; *Mobbs* v. *Bur- row*, 112 Ark. 134, 165 S. W. 269.

Much weight must be given to testimony that the willows, which appeared on these accretions to Island 62 on the south, gradually grew smaller and shorter and to taper off as they approached the sand bar on this south shore line of 62. *Mosby Dennison Company* v. *Maxwell*, 146 Ark. 482, 226 S. W. 646.

On the facts before us, we have well defined rules of law to guide us in determining whether the land involved lies within accretions to appellants' land.

As above noted, a number of maps and charts pre- pared by Government engineers and the Mississippi River Commission were placed in evidence, and in the circumstances here, we attach considerable weight to them, their accuracy being unquestioned. In the recent

1060

case of *Horne* v. *Howe Lumber Company, ante,* p. 202, 190 S. W. 2d 7, we said: "These surveys were prepared by the War Department and were admissible in testimony without other proof of their accuracy. It was held in the case of *City of Los Angeles* v. *Duncan,* 130 Cal. App. 11, 19 Pac. 2d 289, that: 'Such maps are *prima facie* evidence of the facts shown thereon, but the weight and effect to be given thereto is a question of fact for the court.' "

This court, quoting from *Nix* v. *Pfeifer, supra,* said: "Land formed by gradual and imperceptible accretion or by gradual recession of the water belongs to the owner of the contiguous land to which the addition is made," and in *Wallace* v. *Driver,* 61 Ark. 429, 335 S. W. 641, said: "In order to constitute an accretion, it is not necessary that the formation be indiscernible by comparison at two distinct points of time. It is true that it is an addition to riparian land, 'gradually and imperceptibly made by the water to which the land is contiguous'; but the true test 'as to what is gradual and imperceptible in the sense of the rule is that, though the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on.' . . . When a riparian owner becomes the owner of land, he acquires, as incident thereto, without price, whatever may be added to it by gradual and imperceptible accretion, while, at the same time, he assumes the risk of losing it all by its being gradually washed away by the waters of the river; but his line always remains at the water's edge, wherever that may be. His line expands as the waters recede and accretions form to his land, and contracts as the waters encroach upon and wash away his land."

In *Belle Fontaine Improvement Company* v. *Niedringhaus,* 181 Ill. 426, 55 N. E. 184, 72 Am. St. Rep. 269, the annotator defines an island: "It may be said that to constitute an island in the river the same must be of a permanent character, not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not a sand bar, subject to overflow by the rise of the river and connected with the main-

land when the river is low." (See, also, *Hahn* v. *Dawson*, 134 Mo. 581, p. 589, 36 S. W. 233.)

As above noted, we think the great weight of the testimony establishes that the area in controversy represents true accretions to Island 62, land owned by appellants, and that "Island 62 towhead" which the testimony showed was completely washed away in 1912, never reappeared or reformed.

Finally, appellee contends that even though it should be established that the land here involved belonged to appellants by accretion, still appellee should be declared the owner for the reason that he and his predecessors in title have paid the taxes on the land continuously from 1911 to 1931 inclusive, and in support of this contention pleads the provisions of §§ 8920 and 8921 of Pope's Digest, along with adverse possession and laches.

Having concluded that the land involved belongs to appellants by accretion, we think these contentions of appellee to be without merit for the reason that the land upon which he paid the taxes from 1911, as above indicated, was described on the assessment books of Phillips county as "towhead between Islands 62 and 63, adjoining and part of section 36, T. 4 S., R. 3 E., 1,000 acres, in Phillips county, Arkansas." Obviously, this description attempts to describe "Towhead Island 62" alleged to be lying between Island 62 and Island 63. It does not describe any land now owned, or ever claimed, or owned by appellants in view of our holding here that "Towhead Island 62" disappeared in 1912 and has never reappeared. In other words, this description was no notice to appellants that appellee was paying taxes on any of their land.

For the errors indicated, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.

GRIFFIN SMITH, Chief Justice, not participating.