JOHN C. JACOBS and GEORGE W. CROWLEY v. FRANK D. STONER and LENA WALLER; LENA WALLER, Appellant.—7 S. W. (2d) 698.

Division One, May 18, 1928.

*Milligan & Thompson, Pross T. Cross* and *Blackwell & Sherman* for appellant.

*John C. Jacobs, George W. Crowley, E. A. Farris* and *Lavelock, Kirkpatrick, Clark & Garner* for respondents.

SEDDON, C.—This action was originally commenced in the Circuit Court of Ray County on September 9, 1924. The petition is in conventional form, and is cast in two counts, the first count seeking to ascertain, determine and quiet the title to certain land, alleged to be situate in Ray County, Missouri, and described as follows: the west one-half of Section 30, Township 51, Range 27, containing 320 acres, more or less; the west one-half of the northeast quarter of Section 30, Township 51, Range 27, containing eighty acres, more or less; and the northwest quarter of the southeast quarter of Section 30, Township 51, Range 27, containing forty acres, more or less; the said described land containing in the aggregate 440 acres, more or less. The second count of the petition is in ejectment for possession of the same land. The action is a companion case to Akers v. Stoner, 319 Mo. 1085, ruled in this division at the present term, and both cases were tried, by stipulation of the parties, upon the same evidence, and the pleadings are likewise substantially the same in both cases. The defendant Stoner herein filed no pleading and made default.

The answer of defendant Lena Waller denies generally the allegations of the petition; avers that she is the owner of certain described lands, alleged to be situate in Lafayette County, and has had continuous, exclusive, adverse, and peaceable possession thereof for thirty-five years prior to the commencement of the present action; that she does not know whether the said lands are identical with the lands described in the petition, but admits that she is in possession of such part thereof as is west of the westerly edge of the old Missouri River slough; that defendant Stoner is the grantee of certain described shore lands in Lafayette County, and that defendant Waller acquired, by quitclaim deed from said Stoner, certain described lands, designated as Tract A, the same being accretions to Stoner's said

shore lands; that defendant Waller, by proper deeds of conveyance, acquired title to certain described shore lands in Lafayette County and is the owner of said shore lands, with accretions thereto, described as Tract B; that defendant Waller is the grantee in a patent from Lafayette County, dated December 28, 1914, conveying to her all the right, title and interest of Lafayette County in and to certain described lands in said county aggregating 947.37 acres, which lands embrace and include said Tracts A and B, with the accretions thereto; that on or about July 3, 1915, there was a sudden change or avulsion of the Missouri River, and that the lands described in the answer were, at the time of said avulsion, south and west of the middle of the main channel of the Missouri River, and were in Lafayette County and still remain in said county; that defendant Waller claims no land which was north of the middle of the main channel of said river as it existed at the time of said avulsion, but does claim the described lands as being south and west of the middle of the main channel of the Missouri River at the time of said avulsion, and denies that said lands were or are in Ray County, and therefore denies the jurisdiction of the Circuit Court of Ray County over the subject-matter of the action; that the lands described in the answer consist of the described deeded lands, with the accretions thereto gradually and imperceptibly formed by gradual changes in the banks and course of the Missouri River; that defendant, and those under whom she claims, have been in open, adverse, notorious, exclusive, peaceable and continuous possession thereof for thirty-five years before the commencement of the action, and has made valuable improvements thereon; that defendant is unable to determine whether the lands described in the answer are identical with those described in the petition, but if the lands described in the petition are included within those described in the answer, then such lands, or parts thereof so included, were, many years ago, washed away by the action of the current and waters of the Missouri River, and the lands now in possession of defendant were formed by accretion in the place and situs of the lands so washed away. The answer also pleads the bar of the several statutes of limitation.

The reply is a general denial of the averments of the answer. The venue was changed to the Circuit Court of Clinton County, where the action was tried to the court, a jury having been waived by agreement of the parties.

The evidence shows that all of the lands described in plaintiff's petition, and in controversy herein, lay north and east of the main channel of the Missouri River as that channel existed during and prior to the year 1875, and for some years thereafter; and the evi-

dence further shows that some time after the year 1875, the Missouri River began cutting away the land on the Ray County side of the river to the north and east of the channel of the river as it existed in 1875, so that, during the period from 1875 to 1915, the main channel of the Missouri River had shifted, gradually and imperceptibly, far to the north and east of the channel of 1875. Prior to the month of July, 1915, the form of the main channel of the Missouri River was that of a horseshoe, or of the inverted letter U. On or about July 3, 1915, the river, by avulsion, suddenly and in a single night, cut a new channel, distant some two and one-half or three miles south of the lands in controversy, through what is called in the record the "Egypt bottom," in which new channel the waters of the river have since continuously flowed, and were so flowing at the time of the trial of the present action, thereby abandoning the main channel of the river as it existed at and prior to the time of the avulsion in July, 1915. The foregoing facts are not controverted by plaintiffs (respondents). On the other hand, such facts are specifically admitted in respondents' printed brief filed in this court, from which we quote such admission, as follows: "In 1915, the river had entirely cut away the land described in the petition, except about three acres in the northeast corner of the northwest quarter of the northeast quarter of Section 30. On July 3, 1915, the river suddenly changed its course and cut a new channel several miles south of the land in controversy. About the year 1877, an island began to form in the river opposite the land described in plaintiff's petition. At the time of the avulsion in 1915, this island had grown until it comprised several hundred acres, and included all of the original situs of the plaintiffs' land except the portion occupied by the eastern channel of the river and except the three acres which were still north and east of the river. This island is identical with tracts A and B described in defendant's answer."

The island thus referred to in respondents' brief, and admitted by respondents to be of island formation which had formed or sprung up in the river channel after the lands which had previously existed in 1875 had been entirely cut away by the erosive action of the river, is referred to in the record as "Lena Waller Island," and embraces some 900 acres, more or less, in area. The greater part of the land in controversy, according to the surveys and plats in evidence, is included within the boundary lines of said island.

A rough plat, or blue-print, of "Lena Waller Island," apparently not drawn to any scale, and identified as plaintiffs' Exhibit B, is in evidence, and shows to some extent the relative location of said island with respect to the banks of the Missouri River as they existed just

prior to the avulsion of July, 1915. We append such plat to our opinion herein for the purpose of a better understanding of the *locus in quo.*

PLAT OF CAMDEN BEND OF MISSOURI RIVER IN 1915
AS SURVEYED BY W.A.MULLINS, CIVIL ENGINEER.
LEGEND:-
———— SECTION LINES IN RAY COUNTY.
------- LAFAYETTE Co. SEC. LINES IF EXTENDED INTO RAY Co.
++++++ ISLAND CLAIMED BY MRS.WALLER AND DESCRIBED IN
HER ANSWER AS TRACTS "A" AND "B".
～ MISSOURI RIVER BANK LINE IN 1915

There is some evidence to the effect that, prior to the avulsion of 1915, a part of the waters of the Missouri River flowed around the north, east and south sides of said island, and that a part of the waters of the river continued to flow on the west side of the island, substantially along the course of the main channel of the river as it existed in 1878. One of plaintiffs' witnesses referred to the channel on the west side of the island as being a "slough" in 1915, and another witness testified that the west channel carried about "a third of the water of the river." The greater weight of the evidence, however, tends to show that the main channel of the river, immediately prior to the avulsion of 1915, was on the north, east and south sides of "Lena Waller Island," and that, after the avulsion and at the time of the trial in 1924, there was a lake of considerable size and area on the east side of the island, whereas the channel on the west side of the island was dry, or practically dry. Respondents, in fact, make the admission in their brief, filed on this appeal, that the "evidence shows that this land (in controversy) first appeared as an island; that, *while the main channel ran on the east side of the land,* a considerable portion ran on the west side between this land and the Stoner and Waller shore land." (Italics ours.) The County Court of Lafayette County caused the island to be surveyed in 1914; and conveyed the island, by patent, to the defendant and appellant,

Lena Waller. The trial court, by his findings of fact, found the fact to be that "all of the land described in the patent from Lafayette County to the defendant, Lena Waller, introduced in evidence, which said patent was dated the 28th day of December, 1914, was, at the time of the issuance of said patent, and had been since long prior to 1915, an island in the Missouri River . . .; *that all of said island lies west of the main channel of the Missouri River, as it ran in the, year 1915.*" (Italics ours.)

The evidence shows, without conflict, that plaintiffs have never, at any time, been in possession of the land known as "Lena Waller Island." Plaintiffs found their claim of title to, and their right to possession of, the lands in controversy upon a swamp land patent issued to them by the County Court of Ray County, dated November 8, 1923, purporting to convey to them 440 acres, more or less, as described in the petition. The said patent purports to convey to plaintiffs the land described, "which was formed by the recession and abandonment of the waters of the old bed of the Missouri River, belonging to said (Ray) County, and all the right, title, interest and estate which the said county has of and in the same." Defendant, Lena Waller, grounds her claim of title to, and the right to possession of, the lands in controversy upon certain deeds conveying to her the title to certain described shore lands in Lafayette County, and the accretions thereto, and upon a patent, dated December 28, 1914, issued by the County Court of Lafayette County, conveying to said defendant 947.37 acres of land, constituting said "Lena Waller Island," for an expressed consideration, paid to Lafayette County by defendant Waller, of $1184.21, or a consideration of $1.25 per acre. The patent recites that "it having been shown to the satisfaction of the County Court of Lafayette County, Missouri, at its May term, 1914, thereof, that an island had formed in the Missouri River, a navigable stream, and on the Lafayette County side thereof, which said island is of recent formation, and said island and the accretions thereto now approach close to the Lafayette County shore of said river, and said island, with accretions thereto, formed in the old bed of the Missouri River," the County Court of Lafayette County had ordered said tract of land to be surveyed and to be sold, as part of the school lands of Lafayette County, at private sale for the best price obtainable, in cash, of not less than $1.25 per acre. The evidence of defendant tends to show that, while defendant was claiming the island as accretion to her deeded shore lands on the west and south, she purchased the land as an island from Lafayette County in order to protect her claim of title to the land as accretions, and so that she might become the owner of whatever title, or interest, Lafayette County might have in said land. Defendant has been in possession of the land conveyed to her by Lafayette County since the delivery

of said patent, has fenced the same, built improvements thereon, paid the taxes thereon, and has continuously cultivated the land, or portions thereof.

The evidence further shows that, in the year 1922, the county courts of Ray and Lafayette counties caused the respective county surveyors to proceed together and to ascertain, survey and mark out the boundary between the two counties, which had been lost or obliterated by the avulsion of the Missouri River in 1915. The line which these surveyors surveyed, platted, and marked out, was (as nearly as was ascertainable) that of the middle of the main channel of the river as it existed just prior to the avulsion, or sudden change of the river course, in 1915, and as disclosed by the old abandoned river bed. Witness Mullin, Surveyor of Ray County, testified: "Q. Now, in locating this line in 1922 between the two counties, you undertook to locate that about the middle of the old bed of the river, where it was before the avulsion? A. About the middle of the lowest part of the old bed of the river when it made the change in 1915. Q. And that is where you ran—you and Mr. Swift—ran your county line, at the middle of the lowest part of the bed as it was at the time the river made that change? A. As it was in 1922, guessing at, of course, the balance of it. Q. But it was your attempt, and you were trying to locate the line between the two counties in the middle of the lowest part of the old river bed? A. Yes, sir. . . . Q. The lowest place in the old river bed? A. Yes, sir. Q. You didn't have anything to indicate to you in 1922 where was the lowest place of the old river bed in 1915, did you? A. Only where the water was running yet. Q. Just by the water? A. Yes, sir. Q. Well, now, in 1922, what water do you refer to? A. The water in the slough along where this line is at or near the center (indicating). Q. That is, the slough on the east side of the Waller Island? A. Yes, sir. Q. And the slough that is on the north side of Waller, and on the north side of Stoner? A. Yes. Q. Did you undertake to fix the boundary between the two counties as the center of that slough? A. We made a survey for the purpose of making a plat. We made a survey and plat for the purpose of a report—for the courts to either approve or disapprove. . . . Q. You measured out a line? A. Yes, and went along the center of the slough as it ran in 1922, which was supposed to be the lowest place in 1915, at the time the river made the change. Q. That was a line beginning approximately at Stoner's northwest corner, and ran around north of the Stoner land, and north of Mrs. Waller's land, then down east of Mrs. Waller's land? A. Yes, sir, approximately. Q. All this land that is sued for in these six suits is south and west of that line? A. Yes." The respective orders entered of record by the county courts of Ray and Lafayette counties, approving the line between

said counties as ascertained, marked out and surveyed by the respective county surveyors, pursuant to Sections 9408-9411, Revised Statutes 1919, are not in evidence in the present case.

The crucial question for decision in the present case is whether the land in controversy, or more particularly that part of said land which is claimed by defendant Lena Waller, and which lies south and west of the middle of the main channel of the Missouri River as it existed at the time of the avulsion of 1915, was located in Ray County, or whether such land was located in Lafayette County, at the time of the avulsion. If said land was located in Ray County at the time of the avulsion of 1915, then plaintiffs have the better title by virtue of the patent from Ray County, dated November 8, 1923, purporting to convey the land in controversy to plaintiffs. If, on the other hand, said land was located in Lafayette County at the time of the avulsion of 1915, then defendant has the better title by virtue of the patent from Lafayette County, dated December 28, 1914, conveying to her the island known as "Lena Waller Island."

Plaintiffs contend that the boundary line between Lafayette and Ray counties is now, and has been since the date of operation, or taking effect, of our present State Constitution on November 30, 1875, the middle of the main channel of the Missouri River as the same existed on November 30, 1875. Defendant, on the other hand, contends that the boundary line between Lafayette and Ray counties is the middle of the main channel of the Missouri River as it existed at the time of the avulsion of 1915. The learned trial court, following what he believed to be a controlling decision of this court (hereinafter cited and referred to), at the request of plaintiffs, declared "the law to be that the boundary line between Ray and Lafayette counties is the center of the main channel of the Missouri River as the same existed on November 30, 1875, the date the present Constitution of Missouri became operative," and "that the title to all islands shown by the evidence to have been formed in the Missouri River, and all lands uncovered and left dry by the sudden change in the course of said river in July, 1915, became and was vested in the county in which such lands were situate, and were subject to sale by such county in the manner provided by law," and, therefore, "that Lafayette County had no title to; and could not convey to the defendant, Mrs. Waller, any land not situate in said Lafayette County." The trial court refused a declaration of law, requested by defendant, to the effect "that the boundary line between Ray County and Lafayette County, at the time of the institution of this suit, was the middle of the main channel of the Missouri River as it existed immediately prior to the avulsion of July 3, 1915." The court made the finding of fact "that all of the land described in the patent from Lafayette County to the defendant, Lena Waller, . . . was, at

the time of the issuance of said patent, and had been since long prior to 1915, an island in the Missouri River . . .; that all of said island lies west of the main channel of the Missouri River, as it ran in the year 1915, but all of said island lies east of the main channel of the Missouri River, as it ran on November 30, 1875, and it is all situate in Ray County, Missouri; that the patent from Lafayette County conveyed no right, title or interest in or to said lands to said defendant.''

Judgment was entered for plaintiffs and against the defendant on both counts of the petition. After unsuccessful motions for new trial and in arrest of judgment, defendant, Lena Waller, was allowed an appeal to this court.

Plaintiffs and respondents assert that the judgment and findings of the learned trial court are right, under the ruling and decision of Division Two of this court in the case of Northstine v. Feldmann, 298 Mo. 365, upon which decision the trial court planted his findings and judgment. That decision ruled that the boundary lines between the several counties of the State, as they existed on November 30, 1875, at the time the present Constitution of this State became operative, were inexorably fixed as of the date said Constitution became operative, except as thereafter changed at and by an election of the qualified voters of the counties immediately interested. The Northstine case has since been overruled by this court, en banc. to the extent of the holding just referred to, in the case of State ex inf. v. Hoffman, 318 Mo. 991, 2 S. W. (2d) 582, decided on February 4, 1928. The Hoffman case involved the particular place and avulsion involved in the present case, and this court, en banc, ruled that the Constitution of 1875 did not supersede the rules and principles of the common law that gradual, imperceptible and insensible changes in the course, or channel, of a river work corresponding changes in boundary lines marked by the river channel.

The finding of the trial court, amply supported by the evidence, is that all of ''Lena Waller Island,'' the land to which defendant claims title and the right of possession, lies west of the main channel of the Missouri River as it ran in the year 1915, immediately prior to the avulsion. The statute in force at the time of the adoption and taking effect of the Constitution of 1875 (now Secs. 9328, 9368, R. S. 1919) made ''the middle of the main channel of the Missouri River'' the boundary line between Ray and Lafayette counties. Under our late ruling in the Hoffman case, supra, the middle of the main channel of the Missouri River, as it existed immediately prior to the avulsion of 1915, marks the then existing boundary line between Ray and Lafayette counties. That boundary line was not changed by the avulsion of 1915. [Gould on the Law of Waters (3 Ed.) sec. 159; Nebraska v. Iowa, 143 U. S. 359; Missouri v. Nebraska, 196 U. S. 23;

Cooley v. Golden, 52 Mo. App. 229; State ex inf. v. Hoffman, supra.]
It follows, therefore, that Ray County had no title to that part of the
land in controversy, and described in the petition and judgment,
which lies south and west of the middle of the main channel of the
Missouri River as it existed immediately prior to the avulsion of 1915,
and that the patent purporting to convey said land to plaintiffs, is-
sued by Ray County on November 8, 1923, was ineffective to convey
said land, and plaintiffs have failed to show that they have title there-
to. On the other hand, defendant, Lena Waller, has shown that she
has title to said land under and by virtue of the patent from Lafay-
ette County, dated December 28, 1914, conveying to her the land
known as "Lena Waller Island."

It appears to be undisputed and uncontradicted upon the record
herein, however, that approximately three acres in the northeast cor-
ner of the described land in controversy has never been cut or washed
away by the erosive action of the Missouri River and has always been
located in Ray County, and also that a small part of the described
land in controversy lies north and east of the middle of the main
channel of the Missouri River as it existed immediately prior to the
avulsion of 1915. Inasmuch as such part of the described land is,
and was at the time of the avulsion of 1915, situated and located in
Ray County, the Circuit Court of Ray County had jurisdiction of
the present action, which was originally commenced in Ray County,
and the Circuit Court of Clinton County had derivative jurisdiction
by reason of the change of venue of the action from Ray County.
Section 1179, Revised Statutes 1919, provides: "Suits for the pos-
session of real estate, or whereby the title thereto may be affected,
. . . shall be brought in the county where such real estate, *or
some part thereof*, is situated." (Italics ours.)

The findings and judgment of the trial court are erroneous for the
reasons herein stated, and the judgment *nisi* must be reversed and the
cause remanded. By her answer herein, defendant, Lena Waller,
"claims no land which was north of the middle of the main channel
of the Missouri River as it existed at the time of said avulsion," and
the brief of appellant herein admits that "Mrs. Waller does not
claim any land involved in this suit except that part of it south
and west of the south and west bank of the river as it ran at the time
of the avulsion." There is, therefore, no controverted issue of law or
fact to be retried below. It appears from the record herein that the
respective county courts of Ray and Lafayette counties have fixed
and located of record, pursuant to statute, the boundary line between
Ray and Lafayette counties (as nearly as possible) as it existed just
prior to the avulsion of 1915, and that the boundary line so fixed of
record is approximately that of the middle of the main channel of

the Missouri River as it existed just prior to the avulsion as disclosed by the old abandoned river bed.

The cause is therefore remanded with directions to the trial court to enter a new judgment, adjudging that plaintiffs have title to, and possession of, that part of the land described in the petition which lies north and east of the boundary line between Ray and Lafayette counties, as fixed and located of record by the county courts of said counties, and adjudging that defendant, Lena Waller, have title to, and possession of, all that part of the land described in the petition which lies south and west of the said fixed and located boundary line between Ray and Lafayette counties. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.