[No. 32626. Department One. November 16, 1953.]

ALASKA AIRLINES, INC., *Plaintiff,* v. F. H. MOLITOR *et al., Defendants and Relators,* HUGH C. TODD, *as Judge of the Superior Court for King County, Respondent.*[1]

[1]Reported in 263 P. (2d) 276.

*G. Bradley Dalton,* for defendants and relators.

*Allen, Hilen, Froude, DeGarmo & Leedy,* for plaintiff.

HILL, J.—This is an application by the defendants and relators, F. H. Molitor and his wife, hereinafter referred to as the Molitors, for a writ of prohibition to prevent the superior court for King county from entering an order directing them, or any persons claiming possessory rights by or through them, to vacate and surrender to Alaska Airlines, Inc., all right, title, and possession of those certain premises described as follows:

"Lots 5, 6, and the west 100 feet of Lot 7, Block 10 Merrill Field, Territory of Alaska, according to plat thereof on file in the Office of United States Commissioner, Anchorage, Alaska, TOGETHER WITH all fixtures, appurtenances, and buildings therein";

which order is to become effective upon the filing of a bond or cash in the amount of ten thousand dollars to save the Molitors harmless from any and all damage that may accrue to them arising out of the giving up of the premises. Concededly, the superior court for King county cannot evict the defendants or those claiming possession by or through them

from premises located at Anchorage, Alaska; so the order further provides that if it is not obeyed, the defendants' pleadings will be stricken and a default judgment will be entered against them upon application of the plaintiff.

The circumstances which gave rise to the utilization of this drastic remedy are as follows:

On April 7, 1953, the plaintiff, Alaska Airlines, Inc., and defendant Frank H. Molitor (hereinafter referred to as Molitor) entered into an agreement whereby the former agreed to sell and the latter agreed to buy, for forty-five thousand dollars, the plaintiff's interest in the property above described, which contains 104,000 square feet and is a portion of Merrill field, the airport of Anchorage, Alaska. The buildings referred to in the proposed order, as described in the agreement, are "one frame building of approximate dimensions of 55 feet by 30 feet and one frame building of approximate dimensions of 140 feet by 75 feet," and are used for hangar facilities. The real property described belongs to the city of Anchorage, and Alaska Airlines, Inc., had a "use permit" for a period of five years (comparable to a lease) which had been issued to it by the city of Anchorage on February 3, 1953. As part of the agreement of sale, the corporation agreed to assign to Molitor this so-called use permit. It is apparently conceded that the buildings were the property of the corporation.

Alaska Airlines, Inc., commenced an action in the King county superior court July 3, 1953, alleging that Molitor had failed to make certain of the payments required by the agreement; that the sale and assignment of its use permit to Molitor had been approved by the city council of Anchorage, Alaska, May 8, 1953, and that he had been notified of that fact; that he had taken physical possession of the property May 15, 1953; that while in his possession the property had suffered physical damage in the amount of two thousand dollars; that the market value of the property had depreciated in the amount of fifteen thousand dollars due to a decline in business activity in Anchorage; and that there had been a total breach of the agreement and an abandon-

ment thereof on or before the second day of July, 1953. By its prayer, Alaska Airlines, Inc., asked for damages in the amount of seventeen thousand dollars; interest on forty-five thousand dollars at the legal rate from and after July 2, 1953; seven hundred fifty dollars for each month from and after the seventh day of April, 1953, to the date of the breach; and for such other and further relief as to the court may seem meet and proper, *"including whatever may be required to restore to plaintiff the premises and property"* described in the agreement.

Molitor's attorney wrote Alaska Airlines, Inc., July 14, 1953, claiming that it had not, within the time limited by the contract, made a showing that it was able to transfer clear title to the property covered thereby, and had breached the contract by instituting a legal action prior to the performance of its portion of the contract. The letter then stated:

" ' . . . I am hereby giving notice of the election of Frank H. Molitor to cancel said Contract in accordance with the terms of Paragraph 6 of said Contract. I am further hereby making demand for return of such monies as may be held by the Seattle First National Bank and which have been garnished by the Alaska Air Lines, Inc.

" 'I am further hereby making demand upon the Alaska Air Lines, Inc. to remove within three days the two frame buildings owned by the Alaska Air Lines and now located at Merrill Field, City of Anchorage, Third Division, Territory of Alaska, and on property more particularly described as follows, to wit:

" 'Lots 5 and 6 and West 100' of 7 according to the official map and plat of Merrill Field, City Airport, Anchorage, Alaska.

" 'This notice is hereby given for the reason of the failure of the Alaska Air Lines, Inc. to comply with the terms of the Agreement of Sale entered into by and between Alaska Air Lines, Inc. and Frank H. Molitor on April 7, 1953 and particularly in the failure to deliver clear title or evidence of the same and the failure of the assignment of the Use Permit and the approval of the same by the City Council, of Anchorage, Alaska.' "

It is to be inferred from the foregoing demand that the buildings be removed from the real property described, that

Molitor is claiming some right, title, and interest in and to the real property from some source other than the agreement which he had elected to cancel.

Alaska Airlines, Inc., filed a motion August 4th for an order directing the Molitors to surrender all right, title, and possession of the premises described in the agreement, together with the buildings thereon, which motion was based on an affidavit by one of its attorneys alleging, *inter alia*: (a) that the Molitors had taken actual possession of the premises on or about May 15, 1953; (b) that the assignment of the use permit from Alaska Airlines, Inc., to the Molitors had been approved May 8, 1953; (c) that Molitor had, by virtue of the letter of his attorney dated July 14, 1953, elected to cancel the contract; (d) that, since the parties were in agreement that the contract of April 7, 1953, had been canceled, the continued possession of the premises by the Molitors was a continuing trespass; (e) that the Molitors were continuing in possession thereof, and that "said premises are utilized by and purportedly leased" by Molitor; (f) that the principal item of damage claimed by Alaska Airlines, Inc., is the continuing depreciation of the premises, and to establish its damages and also to minimize them, it desires to sell the premises at the best price obtainable at the earliest opportunity; (g) that Alaska Airlines, Inc., does not believe Molitor to be financially responsible in the amount of the damage being incurred; (h) that the litigation may be protracted and the Molitors may remain in possession to the continuing detriment of Alaska Airlines, Inc.; (i) that Alaska Airlines, Inc., has no adequate remedy at law and will be irreparably damaged if the Molitors are not required to vacate the premises.

In opposition to this motion, Molitor filed an affidavit dated August 6, 1953, alleging, *inter alia*: (a) that Alaska Airlines, Inc., had, on May 12, 1953, abandoned possession of and any rights or interest it may have had in the premises described in the agreement; (b) that Alaska Airlines, Inc., had also abandoned any right, title, or interest in its use permit; (c) that, with the knowledge and acquiescence of Alaska Airlines, Inc., the city of Anchorage had revoked

the corporation's use permit; (d) that on or about May 12, 1953, the city of Anchorage issued a new use permit to the Northern Transportation & Storage Co., Inc., an Alaska corporation, which corporation has since been and is now in exclusive possession of said premises; (e) that Alaska Airlines, Inc., has no right and can acquire no right of posession by any order of the superior court for King county; (f) that the affiant, F. H. Molitor, has no right or authority to surrender possession of the premises.

(An affidavit by one of the attorneys for Alaska Airlines, Inc., denying the material allegations of this affiant, is quoted in the briefs, but is not a part of the record before this court.)

An affidavit of Ralph W. Starkey, filed August 10, 1953, in support of the motion and apparently in answer to that of Molitor, reads as follows:

" 'RALPH W. STARKEY, being first duly sworn, on oath deposes and says:

" 'That he is a vice-president of plaintiff Alaska Airlines, Inc., in active charge of negotiations with defendant F. H. Molitor for the sale to the latter of plaintiff's hangar at Merrill Field, Alaska; that in connection with said sale said Molitor represented that he would undertake to obtain from the City of Anchorage, owner of the real property on which the hangar was located, approval of assignment of the Alaska Airlines' lease to Molitor; that it now appears that Molitor, without knowledge or consent of Alaska Airlines, procured issuance directly to Molitor, or a corporation which he controls, of a new lease to the premises; that said action of Molitor was (1) without authority of Alaska Airlines and (2) in any event premature because the sale of the hangar to Molitor was not then consummated; that said sale has never been consummated, and all parties now agree that the sale contract is totally breached and cancelled; that Molitor nonetheless continues to assert possessory rights to the said hangar, has locked its doors, and prevented its use or sale by Alaska Airlines; that Molitor has suggested that the value of the hangar is only $15,000, and has offered to pay Alaska Airlines that sum for said hangar (instead of $45,000 called for by the contract); that to minimize damages plaintiff should resell the hangar at the largest possible price, at once, and to that end defendants should be enjoined

from continued possession of premises which they agreed, in a contract they now repudiate, to buy.' "

On this record, the respondent, one of the judges of the superior court of the state of Washington for the county of King, indicated that he would sign the order referred to in the opening paragraph of this opinion; whereupon, the Molitors sought a writ of prohibition.

This court then made an order to show cause why a writ of prohibition should not issue, directed to the respondent, and he has submitted a return prepared by his attorneys, who, as is customary in proceedings such as this, are the attorneys for the party seeking the order the entry of which we are asked to prohibit. It is stated in the return that the "true facts relating to possession of the premises at issue herein . . . are as alleged in the affidavit of RALPH W. STARKEY."

The statements in Mr. Starkey's affidavit may well be true, but for the respondent to determine at this stage of the proceedings, before an answer has been filed or the issues determined or any testimony taken, that Molitor was guilty of deceit and fraud and that he controls the corporation to which a use permit or lease of the premises has been issued by the city of Anchorage, seems to us to prejudge the issue of whether he and his wife have any rights, so far as these premises are concerned, other than such as they had acquired under the agreement to purchase from Alaska Airlines, Inc. (The Molitors' attorney, in answer to the respondent's return to the order to show cause, states that the Molitors were given no opportunity to answer Mr. Starkey's affidavit, and that Molitor would deny it if given the opportunity.)

Moreover, we are concerned with the fact that the action here taken *pendente lite* is unusual in that it does not seek to preserve the *status quo* between the parties until trial may be had on the merits, but seeks to change and disturb the last peaceable noncontested condition which preceded the controversy. See *State ex rel. Pay Less Drug Stores v. Sutton,* 2 Wn. (2d) 523, 98 P. (2d) 680 (1940); *Bloedel*

*Donovan Lbr. Mills v. International Woodworkers of America,* 4 Wn. (2d) 62, 102 P. (2d) 270 (1940).

It is conceded by Mr. Starkey's affidavit that Molitor, or a corporation which he controls, has a lease from the city of Anchorage on the real property here involved, yet the respondent is passing upon the validity of that lease as between the parties litigant and intends to enter an order compelling the corporation—assuming, as the respondent does, that Starkey's statements are verities—to surrender possession of the premises by the coercive procedure heretofore referred to, *i.e.,* by striking the pleadings of the Molitors and entering a default judgment in favor of Alaska Airlines, Inc. This seems to substitute, without proper justification, some other remedy for ejectment or unlawful detainer by which the legal right to possession of real property is usually determined. *Harrison v. Lee,* 253 Ala. 543, 45 So. (2d) 705 (1950); *Redwood Hotel v. Korbien,* 195 Md. 402, 73 A. (2d) 468 (1950).

 However, the fact that we may believe a trial court is about to abuse its discretion or commit error does not warrant the issuance of a writ of prohibition; it must be acting without or in excess of its jurisdiction. *In re Jones,* 39 Wn. (2d) 956, 239 P. (2d) 856 (1952), and cases there cited; *Sheffield v. Eagle Lion Films,* 40 Wn. (2d) 361, 242 P. (2d) 1024 (1952).

We turn, then, to the jurisdictional issue: Does a court of the state of Washington have jurisdiction to determine who shall have possession of certain land and the buildings thereon in the territory of Alaska?

Counsel for Alaska Airlines, Inc., and the respondent point out that all parties concede that the real estate involved in this proceeding is owned by the city of Anchorage, and then add:

"The only issue is the possession of certain buildings located on the airport at Anchorage. It is at least doubtful that the possession of buildings on a leasehold is 'real' property."

In the letter by Molitor's attorney heretofore referred to, Alaska Airlines, Inc., was not only offered the buildings but

was requested to remove them from the real property within three days, and that corporation cannot with good grace be heard to say that the possession of the buildings on the leasehold is all that it desires. The order which the respondent has expressed an intention to enter is not limited to the possession of buildings but includes possession of the real property described in the opening paragraph of this opinion.

■ ■ Counsel for Alaska Airlines, Inc., and the respondent recognize the rule that courts of one state cannot pass judgment on title to land in another state or determine who shall have possession thereof, but urge that the order which respondent intends to enter is an order *in personam* even though relating to the possession of property in another state, and that we have approved the entry of such orders in numerous cases.

■ It is true that, *after trial* and a determination of the issues presented, we have approved, *as part of a judgment,* orders directing the conveyance of land in other states by *parties over whom the court had jurisdiction;* but we have no record that any court in this state has ever directed that a party litigant, or those claiming by or through such litigant, surrender possession of real estate in another state or territory. The distinction between requiring performance in another state of acts affecting real property in that state and requiring performance at the forum of an act affecting real property in another state is made clear in *Gunter v. Arlington Mills,* 271 Mass. 314, 171 N. E. 486, 71 A. L. R. 1348, and in the annotation which follows it at 71 A. L. R. 1351. See, also, 4 Pomeroy's Equity Jurisprudence (5th ed.) 900, § 1318.

■ RCW 4.12.010, Rem. Rev. Stat., § 204, provides that actions for the possession of land or any specific article of personal property must be commenced in the county in which the property is located. We have held that the provisions of that statute are jurisdictional and cannot be waived. *Miles v. Chinto Mining Co.,* 21 Wn. (2d) 902, 153 P. (2d) 856, 156 P. (2d) 235 (1944); *Cugini v. Apex Mercury Mining Co.,* 24 Wn. (2d) 401, 165 P. (2d) 82 (1946); *State*

*ex rel. Grove v. Card,* 35 Wn. (2d) 215, 211 P. (2d) 1005 (1949).

However, the fact that a court proposes to enter an order in excess of its jurisdiction is not of itself sufficient to warrant the issuance of a writ of prohibition, if there exists a plain, speedy, and adequate remedy in the ordinary course of legal procedure. *State ex rel. Western Canadian Greyhound Lines v. Superior Court,* 26 Wn. (2d) 740, 175 P. (2d) 640 (1946); *Sheffield v. Eagle Lion Films, supra.*

We have said that when a court attempts to proceed entirely without jurisdiction, the remedy by appeal is inadequate and prohibition will lie. *State ex rel. Munro v. Superior Court,* 35 Wn. (2d) 217, 212 P. (2d) 493 (1949). But, without relying upon that rule, we are satisfied that there is no plain, speedy, and adequate remedy in the ordinary course of legal procedure for the situation now before the court. Any review of the order, whether by appeal or by certiorari, would bring the issues in this case before the court piecemeal. If the order was not appealed but was disregarded on the theory that the court was without jurisdiction and its order was ineffective, and possession of the premises at Anchorage was not delivered to Alaska Airlines, Inc., the corporation would then have to establish that the Molitors, or those holding by, through, or under them or a corporation in which the Molitors or either of them have the principal or controlling interest, were the ones who were refusing to surrender possession before it could utilize the procedure by which the respondent intended to make his extraterritorial order effective, *i.e.,* before it could ask the court to strike the pleadings of the Molitors and enter a default judgment in favor of Alaska Airlines, Inc., on all issues. If such a judgment was appealed from and the appellants prevailed, the procedure would be to set aside the judgment, reinstate the pleadings, and direct that a trial be held, and the lawsuit would start all over again.

We see no plain, speedy, and adequate remedy for the confusion, complications and delays which can result from

this order, which is so clearly beyond the jurisdiction of the superior court for King county. The writ of prohibition will issue.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.

[1]Reported in 263 P. (2d) 266.