Jack R. MOORE, George T. Glozier and Mary Ida Glozier, Plaintiffs-Appellants,

v.

George W. (Son) RONE, Jr., Dora Rone, Donald Rone and Cletus Eugene Rone, Defendants-Respondents.

No. 8002.

Springfield Court of Appeals.

Missouri.

March 16, 1962.

Raymond A. Klemp, Caruthersville, for plaintiffs-appellants.

Ford & Ford, Kennett, for defendants-respondents.

STONE, Presiding Judge.

Averring that on November 18, 1957, "they (plaintiffs) were the owners of and legally entitled to the possession of" certain land described by metes and bounds and identified as an island "containing 550 acres, more or less," in the Mississippi River and within the boundaries of Pemiscot County, Missouri, but alleging that defendants entered into possession of the island on or about June 2, 1958, and thereafter unlawfully withheld possession thereof to plaintiffs' damage in the sum of $4,000 [Rule 89.04, Sec. 524.060],[1] plain-

---

1. All references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R., and all references to statutes are to RSMo 1959, V.A.M.S.

tiffs instituted this action in ejectment in the Circuit Court of Pemiscot County on September 18, 1958. In due time, defendants moved to dismiss the petition with prejudice for the reason, among others, that the court had no jurisdiction over the subject matter of the action. As subsequently developed in an extended hearing upon this motion in the Circuit Court of Mississippi County, to which the cause was transferred on change of venue, defendants' contention was (as it still is) that the island in controversy formed about 1939 on the Tennessee side of the middle of the main navigable channel of the Mississippi River, and that such island then was situate, and at all times thereafter remained, in the State of Tennessee and wholly outside Pemiscot County, Missouri. So finding, the trial court sustained defendants' motion and dismissed the petition with prejudice.

 Plaintiffs appealed to the Supreme Court because, in the oversimplified language of their brief, "the title of land is involved." Art. 5, Sec. 3, Mo.Const. of 1945, 2 V.A.M.S. This was nothing more than a bare conclusion, utterly insufficient and equally ineffective as a jurisdictional statement. Rule 83.05(b); Schoenhals v. Pahler, Mo., 272 S.W.2d 228, 229(1); Jones v. Williams, 357 Mo. 531, 532, 209 S.W.2d 907, 908(1). Ejectment is a possessory action [Wood v. Gregory, Mo., 155 S.W.2d 168, 170(3), 138 A.L.R. 142; Levee Dist. No. 4 of Dunklin County v. Small, Mo.App., 281 S.W.2d 614, 615(1)]; and, "in an ordinary, simple, straight action in ejectment in which no title relief is sought or granted" [Cantrell v. City of Caruthersville, 359 Mo. 282, 290, 221 S.W.2d 471, 476], title to

real estate is involved incidentally or collaterally but not directly in an appellate jurisdictional sense.[2] Thus, by order dated April 21, 1961, the Supreme Court transferred the cause to us.

 At the threshold, we are confronted with defendants'-respondents' motion to dismiss the appeal for the alleged failure of plaintiffs'-appellants' brief to comply with the minimum essentials detailed in Rule 83.05. This motion is not without merit. Plaintiffs' statement of the facts is incomplete and inaccurate in important respects and falls far short of the "fair and concise statement" without argument contemplated by subdivisions (a) (2) and (d) of Rule 83.05. Three averments of error appear beneath the caption "Points Relied On For Reversal" but without citation of authorities thereunder as required by subdivision (a) (3) of Rule 83.05. In the final section captioned "Brief And Citation Of Authorities," plaintiffs set out four abstract statements of law with cases cited thereto but "without showing how they are related to any action or ruling of the Court." Rule 83.05, subd. (e). There is no "argument" which, as subdivision (a) (4) of Rule 83.05 provides, "shall substantially follow the order of 'Points Relied On.'" In the entire brief, we find only one specific page reference to the transcript on appeal. Rule 83.05, subd. (d). In short, plaintiffs' brief affords scant evidence that it was prepared with Rule 83.05 in mind, and dismissal of the appeal for flagrant violations of that rule would be justified and supported by abundant authority.[3] However, mindful that "our primary duty is to litigants rather than to counsel who

2. City of St. Charles v. DeSherlia, Mo., 303 S.W.2d 32, 34(2); Townsend v. Lawrence, Mo., 262 S.W.2d 55; State ex rel. Edie v. Shain, 348 Mo. 119, 122, 152 S.W.2d 174, 176(2); Domyan v. Dornin, Mo.App., 348 S.W.2d 360, 361(2).

3. Walker v. Thompson, Mo., 338 S.W.2d 114, 116–118(6–9); Turner v. Calvert, Mo., 315 S.W.2d 118; Jacobs v. Stone, Mo., 299 S.W.2d 438; Markowitz v. University City, Mo.App., 335 S.W.2d 455; Wildermuth v. Fred Medart Mfg. Co., Mo. App., 330 S.W.2d 126; Lane v. Nixon, Mo.App., 326 S.W.2d 418; State ex rel. State Highway Commission v. Harrison, Mo.App., 311 S.W.2d 104; Parenteau v. Parenteau, Mo.App., 305 S.W.2d 723; Lewis v. Watkins, Mo.App., 297 S.W. 2d 595; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481, and numerous cases there collected.

represent them" [Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647, 650; Songer v. Brittain, Mo. App., 272 S.W.2d 16, 18], and believing that in the interests of justice this appeal should be resolved on its merits [Rule 83.09; Sebree v. Rosen, Mo., 349 S.W.2d 865, 870 (2)], we have concluded, albeit with some hesitancy, to overrule defendants' motion to dismiss the appeal, still confessing our wonderment that capable counsel so frequently assume such not inconsiderable but obviously unnecessary risks in dealing with the interests of their clients. Thompson v. Jenkins, Mo., 330 S.W.2d 802, 803; Steckler v. Steckler, Mo.App., 293 S.W.2d 129, 131.

Plaintiffs' theory of the case has been and is that the island in controversy (hereinafter sometimes called Coal Barge Island, the name in which it was entered on the records of Pemiscot County) became and was the property of Pemiscot County [Secs. 241.290 and 241.300]; that, after the island had been surveyed, Pemiscot County sold it to plaintiff Moore for $687.50, i. e., $1.25 per acre for the computed area of 550 acres [Sec. 241.160], and conveyed the island to Moore by patent executed under date of November 18, 1957; and that, by quitclaim deed of even date, plaintiff Moore (with his wife, Dama) conveyed an undivided one-half interest in the island to plaintiffs, George T. Glozier (the then County Surveyor of Pemiscot County who had surveyed the island prior to issuance of the patent) and Mary Ida Glozier, his wife. Of course, if Coal Barge Island formed, and at all times thereafter remained, in the State of Tennessee, it never belonged to the State of Missouri, title thereto was not granted and transferred to Pemiscot County by Section 241.290 or Section 241.-300, Pemiscot County had no power to sell and convey the island under Section 241.-

310, and the patent issued by Pemiscot County to plaintiff Moore conveyed no interest in the island. Conran v. Girvin, Mo. (banc), 341 S.W.2d 75, 79, 88(13); Akers v. Stoner, 319 Mo. 1085, 1089, 7 S.W.2d 695, 696; Jacobs v. Stoner, 319 Mo. 1093, 1104, 7 S.W.2d 698, 703. And, with actions in ejectment being local to the state in which the land lies [21 C.J.S. Courts § 46, p. 53; 18 Am.Jur., Ejectment, § 66, loc. cit. 62] and with Section 508.030 plainly imposing the mandatory requirement [March v. Gerstenschlager, Mo., 322 S.W.2d 743, 744(1), and cases there cited] that "(s)uits for the possession of real estate . . . shall be brought in the county where such real estate, or some part thereof, is situated," neither the Circuit Court of Pemiscot County in the first instance nor the Circuit Court of Mississippi County on change of venue had jurisdiction to entertain and determine an action in ejectment involving Coal Barge Island, if it was in the State of Tennessee.[4] Accordingly, defendants' motion to dismiss plaintiffs' petition raised and depended upon the crucial issue as to whether Coal Barge Island was in the State of Tennessee; or, as plaintiffs' counsel put it at the hearing, "whether it (the island) is in Missouri or Tennessee is the binding thing."

Since admittance of Missouri into the Union, the state's eastern boundary has been "the middle of the main channel" of the Mississippi River [Enabling Act of Congress, March 6, 1820, Chap. 22, 3 U.S. Stat. 545, 4 RSMo 1959, p. 4781, 1 V.A.M.S. 63; Chap. 7, 3 V.A.M.S. 237; Mo.Const. of 1875, Art. 1, Sec. 1, 1 V.A.M.S. 167] and, of course, that has been and is the eastern boundary of Pemiscot County. Secs. 46.127 and 46.010. When "the middle of the main channel" of a navigable river is designated as the boundary between two states, the

4. Vogelsmeier v. Prendergast, 137 Mo. 271, 286, 39 S.W. 83, 87; Nothstine v. Feldmann, 298 Mo. 365, 374–375, 250 S.W. 589, 592(2, 3); Akers v. Stoner, 319 Mo. 1085, 1089, 7 S.W.2d 695, 696; Randolph v. Moberly Hunting & Fishing Club, 321 Mo. 995, 1014, 15 S.W.2d 834, 841; Warner v. Howard, 339 Mo. 923. 926, 98 S.W.2d 613, 614; Alaska Airlines v. Molitor, 43 Wash.2d 657, 263 P.2d 276, 280–281(4, 5).

quoted phrase refers to and means "the middle of the main *navigable* channel,"[5] this construction serving the important purpose of preserving for each state the free and untrammeled use of the navigable portion of the stream as a highway of commerce; and, if there be more than one channel at any given point, "the *main* navigable channel" is "the one usually followed" [Iowa v. Illinois, 147 U.S. 1, 13, 13 S.Ct. 239, 243, 37 L.Ed. 55, 59] or "the middle, or deepest, or most navigable channel." (All emphasis herein is ours.) Louisiana v. Mississippi, 202 U.S. 1, 49, 26 S.Ct. 408, 421, 50 L.Ed. 913, 930; Whiteside v. Norton, 8 Cir., 205 F. 5, 9, 45 L.R.A.,N.S., 112, appeal dismissed 239 U.S. 144, 36 S.Ct. 97, 60 L.Ed. 186.

In cases of this character, not only the courts but also the litigants lean heavily upon official maps and documents of governmental agencies,[6] which, although not conclusive, usually record, preserve and reveal the vagaries of navigable streams more accurately and more reliably than the frail, fallible memories of ofttimes partisan witnesses. So it is that, with no suggestion of inaccuracy in any of the numerous maps and documents of the War Department Corps of Engineers (hereinafter referred to as the Engineers) and of the Mississippi River Commission (hereinafter referred to as the Commission) received in evidence in the instant case, we think that the material and determinative facts were established by those exhibits beyond reasonable room for argument. Coal Barge Island, spewed out of the maw of the waters of the mighty and mysterious Mississippi, first appeared

in 1939 when, as *plaintiffs'* evidence disclosed, an "ice gorge" hung on the island. Engineers maps dated 1933 and December 1937 showed no such island; but the January 1939 map platted this island as then being approximately one and one-half miles in length, more than one-half mile in width at its broadest point, and about equidistant from the Missouri bank to the northwest and from the Tennessee bank to the southeast, and as lying in the "toe" of a sharp horseshoe curve known as Little Prairie Bend in which the river enters the bend flowing in a northwesterly direction and leaves it flowing in a southeasterly direction. (In the interest of simplicity and clarity, we hereinafter refer to the Missouri bank as being *west* of Coal Barge Island, to the Tennessee bank as being *east* thereof, and to the river as flowing to the *west* and to the *east* of the island.)

The January 1939 map also showed the "channel line" of the Mississippi as running on the *west* side of the newly-formed island, that is, between the island and the Missouri bank, and thus located the island on the *Tennessee* side of the "channel line." Plaintiff George T. Glozier, who qualified himself as being "county surveyor and engineer for the levee district" at the time of hearing and as having "worked about five years for the (Federal) government" with about three years' experience in "the dredging section" of the Corps of Engineers, testified positively that the "channel line" on the Engineers maps "shows the navigation line or the navigable channel"; and plaintiffs' counsel repeatedly stated the same thing, e. g., "the channel is indicated or marked by the Engineers as the naviga-

5. Iowa v. Illinois, 147 U.S. 1, 13, 13 S.Ct. 239, 244, 37 L.Ed. 55, 59; Arkansas v. Tennessee, 246 U.S. 158, 170, 38 S.Ct. 301, 303, 62 L.Ed. 638, 646, L.R.A.1918D 258. See also Kansas v. Missouri, 322 U. S. 213, 214, 64 S.Ct. 975, 976, 88 L.Ed. 1234, 1236; City of St. Louis v. Rutz, 138 U.S. 226, 234, 247, 11 S.Ct. 337, 340, 345, 34 L.Ed. 941, 946, 950; State v. Keane, 84 Mo.App. 127, 131(1); 49 Am.

Jur., States, Territories and Dependencies, § 20, p. 241.

6. Conran v. Girvin, Mo. (banc), 341 S.W. 2d 75, 77; United States v. Romaine, 9 Cir., 255 F. 253, 254(1); Bost v. United States, 9 Cir., 103 F.2d 717, 721; Crow v. Johnston, 209 Ark. 1053, 194 S.W.2d 193, 196(5); Horne v. Howe Lumber Co., 209 Ark. 202, 190 S.W.2d 7, 9–10.

ble channel, marked off for the boats and the transportation up and down the river" —"that is the navigation channel." Engineers maps dated January 1945 and January 1950 and a "before dredging survey" of the Engineers in May 1950 alike fixed the "channel line" on the *west* side of Coal Barge Island and thus continued to show this island on the *Tennessee* side of the navigable channel.

On August 10 and 11, 1950, the Engineers dredged on the *east* side of Coal Barge Island, i. e., between the island and the Tennessee bank, and thereby changed the navigable channel from the *west* side of the island to the *east* side thereof, thus for the first time placing the island on the *Missouri* side of the navigable channel. *Plaintiffs'* witness Lee, a United States Coast Guard lamplighter on the Mississippi since 1948 who had been on the island "every other day from 1948 to 1958," remembered the dredging operation. This change in the navigable channel was recorded in and promulgated by Navigation Bulletin No. 51 issued by the Engineers on August 11, 1950; and all subsequent maps and surveys, including a "general dredging survey" of the Engineers in May 1951, Engineers maps dated September 1951, 1953, 1954 and 1957, a "general hydrographic survey" by the Engineers in March 1957, and Commission maps dated September 1951 and 1952, located the "channel line" or navigable channel on the *east* side of Coal Barge Island.

Plaintiffs adduced oral evidence that, during the period from the formation of Coal Barge Island in 1939 to the dredging by the Engineers in August 1950, some boats and barges were able, *in times of high water,* to hold to the inside of Little Prairie Bend and to pass on the *east* side of the island. Cf. Akers v. Stoner, supra, 319 Mo. loc. cit. 1092, 7 S.W.2d loc. cit. 698. However, *plaintiffs'* witness Lee readily conceded that *"in low water* they all went around where it says channel line," i. e., on the *west* side of the island; and when, on cross-examination, the blunt

inquiry was put to him, *"Prior to 1950 when they (the Engineers) changed the channel . . . the channel of the river was between the island and the State of Missouri, wasn't it,"* Lee quickly agreed, *"The main channel, yes, sir."* In short, the record before us permits of no conclusion other than that Coal Barge Island formed on the Tennessee side of the middle of the main navigable channel of the Mississippi and that such main navigable channel continued to run on the *west* side of the island, i. e., between the island and the Missouri bank, until the Engineers dredged on the *east* side of the island in August 1950 and thereby changed the main navigable channel to that side. Thus, Coal Barge Island formed as a part of the State of Tennessee, and whoever then had title to the submerged land upon which it arose became the owner of the island. Conran v. Girvin, supra, 341 S.W.2d loc. cit. 81(7), and authorities there cited. We have neither legal license nor factual foundation to pursue an inquiry under the statutory and case law of our sister state as to the ownership of this Tennessee island. Suffice it to say that, when the island formed, title thereto could not have vested in the State of Missouri or, by grant from the State [Secs. 241.290 and 241.300], in Pemiscot County. Hecker v. Bleish, 319 Mo. 149, 169, 3 S.W.2d 1008, 1016.

The question remains whether, when the main navigable channel of the Mississippi was changed from the *west* side of Coal Barge Island to the *east* side thereof by the dredging operation in August 1950, the Missouri-Tennessee boundary likewise changed and the island then became a Missouri island, with title then vesting in Pemiscot County under Section 241.-300. Where the boundary between two states is found in running water, changes in such boundary are determined by application of the principles thus succinctly stated (as not in dispute)· in Kansas v Missouri, 322 U.S. 213, 215, 64 S.Ct. 975, 976–977, 88 L.Ed. 1234, 1237(2): " . . .

when changes take place by the slow and gradual process of accretion the boundary moves with the shifting in the main channel's course," whereas "a sudden or avulsive change in that course does not move the boundary, but leaves it where the channel formerly had run." Or, as otherwise put: "Accretion, no matter to which side it adds ground, leaves the boundary still the center of the channel. Avulsion has no effect on boundary, but leaves it in the center of the old channel." Nebraska v. Iowa, 143 U.S. 359, 361, 12 S.Ct. 396, 397, 36 L.Ed. 186, 188; Missouri v. Nebraska, 196 U.S. 23, 35, 25 S.Ct. 155, 157, 49 L.Ed. 372, 375; State ex inf. Mansur v. Huffman, 318 Mo. 991, 995, 2 S.W.2d 582, 583(1).

It is true that the change in the main navigable channel from the *west* side of Coal Barge Island to the *east* side thereof in August 1950 resulted from the dredging operation and thus from an artificial, rather than a natural, cause. But, the change in channel was, for that reason, no less sudden and avulsive in character; and logic compels, and the authorities [7] support, the conclusion that a sudden and avulsive change in the channel of a navigable stream works no change in a boundary found in that stream, regardless of whether such change in channel ensues from an artificial or a natural cause. Otherwise, the law would indulge and endorse a strange and anomalous doctrine under which human agencies, through men and machines, could accomplish boundary changes which the Almighty, through the forces of nature, could not.

However, seeking to escape application of the doctrine of avulsion, plaintiffs here assert that the trial court erred "in finding that there was an avulsion." Although this point is not developed in plaintiffs' brief, it appears from their argumentative statement of facts that they refer (1) to the testimony of plaintiff George T. Glozier that "eventually" the main channel would have changed to the east side of Coal Barge Island anyway because the then main channel on the west side of the island was filling, and (2) to the testimony of witness Lee that "prior to '51, the *Mongahelia* was held up with about 16 barges of steel" in the main channel on the west side of the island. It is exceedingly doubtful whether these isolated, inconclusive evidentiary fragments, thrown into the hearing hopper without explanation or elaboration, proved anything. Furthermore, it is crystal clear that, regardless of what otherwise might have happened "eventually," the change in the main navigable channel occurred suddenly by reason of the dredging operation in August 1950, and *not* over a period of many months or years by a gradual decrease in the flow of water west of the island and by a corresponding increase in the flow east of the island. However, *even if* the change in the main navigable channel had been so wrought over a period of many months or years (with Coal Barge Island remaining stable in position as it has), such change in the main channel to the east side of the island would not have affected Tennessee's jurisdiction over the island or moved the boundary line between Missouri and Tennessee to that side of the island.[8]

7. Whiteside v. Norton, 8 Cir., 205 F. 5, 45 L.R.A.,N.S., 112, appeal dismissed 239 U.S. 144, 36 S.Ct. 97, 60 L.Ed. 186; Arkansas v. Tennessee, supra, 246 U.S. loc. cit. 173, 38 S.Ct. loc. cit. 304, 62 L.Ed. 638, loc. cit. 647; Durfee v. Keiffer, 168 Neb. 272, 95 N.W.2d 618, 623–624; State v. Sause, 217 Or. 52, 342 P.2d 803, 826. See also cases involving *accretions* due to artificial conditions—Whyte v. City of St. Louis, 153 Mo. 80, 87, 54 S.W. 478, 480 (1); Tatum v. City of St. Louis, 125 Mo.

647, 653–654, 28 S.W. 1002, 1003(2); annotation 134 A.L.R. 467.

8. Kansas v. Missouri, supra, 322 U.S. loc. cit. 229, 64 S.Ct. loc. cit. 983, 88 L.Ed. 1234, loc. cit. 1244; Missouri v. Kentucky, 11 Wall. 395, 20 L.Ed. 116, 119; Commissioners of Land Office of State of Oklahoma v. United States, 8 Cir., 270 F. 110, 113–114(2), appeal dismissed 260 U.S. 753, 43 S.Ct. 14, 67 L.Ed. 497; Davis v. Anderson-Tully Co., 8 Cir., 252 F. 681,

■ Finally, plaintiffs urge error in dismissal of the cause, because (1) upon assessment of Coal Barge Island in Pemiscot County, defendants had, in 1955, 1956 and 1957, paid taxes on the island in Missouri, and (2) in connection with a survey procured by them in 1954, defendants had indicated an intention to claim the island as land accreted to that owned by defendants on the Missouri bank. We are supplied with nothing more than a naked statement of the point, curiously unsupported by citation of authority in any section of the brief and conspicuously undeveloped by argument. It is neither our function nor our duty to brief this point for counsel, or to speculate as to the undisclosed legal theory which counsel may have had in mind, or to formulate an argument in support thereof. Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, supra, 266 S.W.2d loc. cit. 651; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481, 483, and cases there collected. The point should be and is treated as abandoned.[9] However, we note in this connection that defendants have made no claim of accretion in this case and that, with the parties agreeing and with the undisputed evidence establishing that the land in controversy

formed as an island in the middle of the Mississippi River, there could have been no basis for any such claim as to Coal Barge Island.[10]

■ It may not be amiss to add that we recognize the firmly-established principle of public law (not mentioned in the briefs) "that, as between the states of the Union, long acquiescence in the assertion of a particular boundary and the exercise of dominion and sovereignty over the territory within it should be accepted as conclusive." [11] And, although we would not be so brash and presumptuous as to speak with respect to a boundary dispute (*if any there may be*) between the State of Missouri and the State of Tennessee, we think it not inappropriate to observe that, in following the quoted principle as between counties, our Supreme Court has pointed out that, in the cases in which the Supreme Court of the United States has announced and applied that principle, "the continued exercise of sovereignty over territory in dispute had been continued for long periods from 50 to 100 years or more" [Randolph v. Moberly Hunting & Fishing Club, 321 Mo. 995, 1006, 15 S.W.2d 834, 837], and to comment that the instant record indicates no attempted

685(4); Durfee v. Keiffer, supra, 168 Neb. 272, 95 N.W.2d loc. cit. 624(11); State v. Ecklund, 147 Neb. 508, 23 N.W. 2d 782, 789–790(6); Courter v. Borough of Lincoln Park, 101 N.J.Eq. 572, 138 A. 99, 102.

9. Rule 83.05, subds. (a) (3) and (a) (4); Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 565(1); Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W. 2d 1015, 1019(7); Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 945(7), 26 A.L.R.2d 278; Lomax v. Sawtell, Mo. App., 286 S.W.2d 40, 43(5); Atkinson v. Coca-Cola Bottling Co., Mo.App., 275 S.W.2d 41, 46(5); Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, 498(14); Wattson v. James B. Welsh Realty & Loan Co., Mo.App., 266 S.W.2d 35, 37 (2). See also Pizzo v. Pizzo, 365 Mo. 1224, 295 S.W.2d 377, 386(13); Royal v. Thompson, Mo., 212 S.W.2d 921, 922(5).

10. Cooley v. Golden, 117 Mo. 33, 23 S.W. 100, 21 L.R.A. 300; Hahn v. Dawson, 134 Mo. 581, 36 S.W. 233; Moore v. Farmer, 156 Mo. 33, 56 S.W. 493; Hamburg Realty Co. v. Woods, Mo., 327 S.W.2d 138, 152. See also Gaskill v. Cook, Mo., 315 S.W.2d 747; Dumm v. Cole County, 315 Mo. 568, 287 S.W. 445; Benson v. Morrow, 61 Mo. 345, 351.

11. Louisiana v. Mississippi, 202 U.S. 1, 53, 26 S.Ct. 408, 423, 50 L.Ed. 913, 932; Maryland v. West Virginia, 217 U.S. 1, 43–44, 30 S.Ct. 268, 279, 54 L.Ed. 645, 658; Randolph v. Moberly Hunting & Fishing Club, supra, 321 Mo. loc. cit. 1006, 15 S.W.2d loc. cit. 837. See also Indiana v. Kentucky, 136 U.S. 479, 510, 10 S.Ct. 1051, 1054, 34 L.Ed. 329, 333; Virginia v. Tennessee, 148 U.S. 503, 523, 13 S.Ct. 728, 736, 37 L.Ed. 537, 544; Michigan v. Wisconsin, 270 U.S. 295, 319, 46 S.Ct. 290, 298, 70 L.Ed. 595, 605.

"exercise of dominion and sovereignty" by Pemiscot County over Coal Barge Island prior to 1955 (only some three years prior to institution of this action) when the island was assessed by and in that county.

On the evidence presented, we are satisfied that the learned circuit judge was justified in dismissing the cause for want of jurisdiction, and that the judgment of dismissal should be affirmed. It is so ordered.

McDOWELL, J., and HUNTER, Special Judge, concur.

RUARK, J., not sitting.